Richard ROLLAND, Appellant–
Defendant,

v.

STATE of Indiana, Appellee.

No. 49A02–0508–CR–712.

Court of Appeals of Indiana.

Aug. 3, 2006.

Jan B. Berg, Indianapolis, IN, Attorney for Appellant.

Steve Carter, Attorney General of Indiana, Scott L. Barnhart, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

## OPINION

SULLIVAN, Judge.

Following a jury trial, Appellant, Richard Rolland, was convicted of two counts of Theft as Class D felonies [1] and one count of Fraud on a Financial Institution as a Class C felony.[2] Upon appeal, Rolland presents the following issues for our review: (1) whether the trial court abused its discretion in admitting into evidence a document under Indiana Evidence Rule 803(6), the business records exception to the hearsay rule, and (2) whether the evidence on the issue of identification is sufficient to support his convictions.

We affirm.

Louise Rehse owns a home in Indianapolis, out of which she rents eight "sleeping rooms." Transcript at 13. James Goodman, one of Ms. Rehse's tenants, helps Ms. Rehse take care of the house. In addition, Goodman has power of attorney over a joint bank account in his and Ms. Rehse's names.[3] Ms. Rehse and Goodman were

---

1. Ind.Code § 35–43–4–2 (Burns Code Ed. Repl.2004).

2. Ind.Code § 35–43–5–8 (Burns Code Ed. Repl.2004).

3. Both Ms. Rhese and Goodman's names appear on the printed checks with a "POA" indicator next to Goodman's name.

the only individuals authorized to write checks on the account.

In December 2003, Rolland began renting a room from Ms. Rehse. In January 2004, Ms. Rehse and Goodman went to stay in Ms. Rehse's trailer in Florida to escape the winter weather in Indiana. Prior to leaving, Ms. Rehse locked the dead bolt to her personal room. Although five individuals had keys to Ms. Rehse's home, only Ms. Rehse had a key to her personal room. Ms. Rehse kept checks for the joint bank account in a chest of drawers in her room and in her medicine cabinet in her bathroom.[4]

While Ms. Rehse and Goodman were in Florida, another of Ms. Rehse's renters, Brian, watched over the home in Indianapolis, collected rent, and deposited the money into the joint bank account. Sometime in March, the bank contacted Brian concerning the joint bank account into which Brian had been depositing money for Ms. Rehse. Brian contacted Ms. Rehse, who then contacted the bank to place a hold on the account. Ms. Rehse and Goodman returned to Indiana the following day and discovered that the door facing to her room had been "pried off." Tr. at 30. Shortly thereafter, Ms. Rehse and Goodman met with bank officials, at which time they were shown checks made payable to "Rich Rolland" and drawn on the joint account, which neither of them had authorized. Further, even though Rolland's possessions were still in his room at Ms. Rehse's boarding house, Rolland never returned.

Upon investigation, it was discovered that in February 2004, an account with Fifth Third Bank was opened under the name "Richard A Rolland" and assigned account number "9651012586." State's Exhibit 11. From February 23, 2004 to March 15, 2004, seven checks written on Ms. Rehse and Goodman's joint account and made payable to "Rich Rolland" were deposited into that account. State's Exhibit 6. The checks ranged in amount from $2,000.00 to $4,250.00.[5] While what appears to be Ms. Rehse's signature is on each of the checks, Ms. Rehse did not sign any of the seven checks, nor did she give anyone else permission to do so on her behalf. Neither did Goodman write or sign the checks or authorize anyone to do so.

Ultimately, the State charged Rolland with forgery as a Class C felony, fraud on a financial institution as a Class C felony, and two counts of theft as Class D felonies. On June 22, 2005, a jury acquitted Rolland of forgery, but found him guilty on the remaining counts. Following a sentencing hearing held on July 6, 2005, the trial court sentenced Rolland to two years on each D felony theft conviction and eight years with four years suspended on the C felony conviction for fraud on a financial institution. The court ordered the sentences served concurrently.

■ Upon appeal, Rolland argues that the trial court abused its discretion in admitting into evidence, over his objection, State's Exhibit 10, which is a computer printout from Fifth Third Bank of a "Customer Information Screen" ("CIS") for an account in the name of "Richard A Rolland."[6] Tr. at 96. Rolland maintains that

4. There was also testimony which indicated that two checks may have been placed in a desk located in the common area of the house.

5. In total, the sum of the checks written on Ms. Rehse and Gooman's joint account was $23,350.

6. Although at trial Rolland objected to numerous exhibits offered by the State, upon appeal

Exhibit 10 did not meet the criteria for admission under Indiana Evidence Rule 803(6), the business records exception to the hearsay rule.

▬ The admission or exclusion of evidence is a matter within the sound discretion of the trial court. *Winbush v. State,* 776 N.E.2d 1219, 1221 (Ind.Ct.App.2002), *trans. denied.* An abuse of discretion occurs if a trial court's decision is clearly against the logic and effect of the facts and circumstances before the court. *Id.* Hearsay is generally not admissible unless it falls within one of the hearsay exceptions. Ind. Evidence Rule 802. Indiana Evidence Rule 803(6) provides such an exception for records of regularly conducted business activity. Specifically, Rule 803(6) provides in pertinent part:

"A memorandum, report, record, or data compilation, in any form, of acts, events, conditions, opinions, or diagnoses, made at or near the time by, or from information transmitted by, a person with knowledge, if kept in the course of a regularly conducted business activity, and if it was the regular practice of that business activity to make the memorandum, report, record, or data compilation, all as shown by the testimony or affidavit of the custodian or other qualified witness, unless the source of information or the method or circumstances of preparation indicate a lack of trustworthiness."

To admit business records pursuant to this exception, the proponent of the exhibit may authenticate it by calling a witness who has a functional understanding of the record keeping process of the business with respect to the specific entry, transaction, or declaration contained in the document. *Shepherd v. State,* 690 N.E.2d 318, 329 (Ind.Ct.App.1997), *trans. denied.* The

witness need not have personally made or filed the record or have firsthand knowledge of the transaction represented by it in order to sponsor the exhibit. *Payne v. State,* 658 N.E.2d 635, 645 (Ind.Ct.App. 1995) (quoting *Belcher v. State,* 453 N.E.2d 214, 219 (Ind.1983)), *trans. denied.* Rather, such person need only show that the exhibit was part of certain records kept in the routine course of business and placed in the records by one who was authorized to do so and who had personal knowledge of the transaction represented at the time of entry. *Id.* Records kept in the ordinary course of business are presumed to have been placed there by those who have a duty to so record and have personal knowledge of the transaction represented by the entry, unless there is a showing to the contrary. *Id.*

During the State's case-in-chief, the State called as a witness a fraud investigator with Fifth Third Bank who identified State's Exhibit 10 as a CIS for an account in the name of "Richard A Rolland." In explaining the account opening process, the investigator testified that the CIS is part of the record created upon the opening of an account and includes the customer's name, address, date of birth, employer, home and work phone numbers, and information as to customer identification (e.g., driver's license). The investigator testified that the CIS is a record that is kept as a regular business record by Fifth Third Bank. The investigator further explained that the information was input into the computer record contemporaneously with the information being provided by the customer opening the account by an authorized bank employee who has a duty to accurately input such information. The investigator acknowledged, however, that other than the name on the account, the information contained in the CIS could be

Rolland challenges only the admission of State's Exhibit 10.

amended or updated so as to reflect changes in the customer's information, such as the customer's address. The investigator reiterated that employees who update or amend information have a duty to input accurate information. Rolland objected to admission of Exhibit 10, which, after hearing arguments of counsel, the trial court overruled.

Upon appeal, Rolland asserts that the CIS, admitted as Exhibit 10, did not meet the requirements of Evidence Rule 803(6) because it was printed long after entry of the information into the computer record. The investigator printed the copy of the CIS on June 16, 2005, six days before Rolland's jury trial commenced. Citing the fact that the information could be changed, Rolland asserts that the CIS does not qualify as a business record because there is no assurance that the information contained in the CIS which was submitted as Exhibit 10 is accurate or that it represents the information input into the computer record when the account was opened in February 2004.[7] We disagree.

Through her testimony, the investigator demonstrated that she had a functional understanding of Fifth Third Bank's record keeping process, specifically, the creation of the record which generated the CIS admitted as Exhibit 10. Her testimony further demonstrated that such record is kept in the routine course of the Bank's business, and the information contained therein is placed into the record by someone who had personal knowledge of the transaction and who had a duty to input accurate information. That the information could be amended or changed within the Bank's computer records does not change the fact that the document is a business record kept in the normal course of business. Even employees charged with making amendments or changes to the record were duty bound to input accurate information. The investigator testified that the information contained in the CIS submitted as Exhibit 10 accurately reflected the information contained in the Bank's records as of June 16, 2005, the day Exhibit 10 was printed from the computer record. Rolland has not made a showing which overcomes the presumptions that the CIS was a record kept in the ordinary course of business or that the record was properly created or maintained. We therefore conclude that the CIS is a business record that fits within the exception to the hearsay rule. *See J.L. v. State,* 789 N.E.2d 961 (Ind.Ct.App.2003); *Jennings v. State,* 723 N.E.2d 970 (Ind.Ct.App.2000). The trial court did not abuse its discretion in admitting Exhibit 10.

■ Rolland also argues that the evidence is insufficient to support his convictions. When reviewing a challenge to the sufficiency of the evidence, this court will neither reweigh evidence nor judge witness credibility, but instead, considering only the evidence which supports the conviction along with the reasonable inferences to be drawn therefrom, we determine whether there is substantial evidence of probative value from which a reasonable jury could have concluded that the defendant was guilty of the charged crime beyond a reasonable doubt. *Kien v. State,* 782 N.E.2d 398, 407 (Ind.Ct.App.2003), *trans. denied.* When a conviction is based upon circumstantial evidence, this court will not disturb the verdict if the fact-

---

7. We note that much of the information contained in the CIS is also contained in other Exhibits admitted as part of the State's evidence, the admission of which Rolland does not challenge upon appeal. To be sure, Exhibit 11 includes the same customer's name, address, date of birth, employer, and home and work phone numbers. The only information unique to the CIS is a driver's license number.

finder could reasonably infer from the evidence presented that the defendant is guilty beyond a reasonable doubt. *Brown v. State*, 827 N.E.2d 149, 152 (Ind.Ct.App. 2005). Additionally, the circumstantial evidence need not overcome every reasonable hypothesis of innocence; the evidence is sufficient if an inference may reasonably be drawn from it to support the verdict. *Id.*

The specific challenge Rolland makes with regard to the sufficiency of the evidence is on the issue of identity. Although acknowledging that checks were written on Rehse and Goodman's joint account without their authorization, that the checks were made payable to "Rich Rolland," and that the checks were then deposited into an account with Fifth Third Bank under the name Richard A. Rolland, Rolland argues that there was no evidence establishing that he was the person who committed these acts. Specifically, Rolland suggests that "because so many people also had access to the house and the checks, the same evidence could show that another tenant at the house seized upon a scheme to defraud Ms. Rehse and the banks, and used the name Richard Rolland to elude detection." Appellant's Brief at 18.

The evidence favorable to the convictions reveals that Rolland rented a "sleeping room" in Ms. Rehse's home and thus had access to blank checks which Ms. Rehse stored in her personal room. There was evidence that while Ms. Rehse was out of town someone forcefully entered her room. All seven of the fraudulent checks drawn on the joint account were made payable to "Rich Rolland" and deposited into an account in the name of "Richard A Rolland." A driver's license was provided as identification at the time of the opening of that account, and the driver's license number and birth date which was recorded by a bank employee for the Bank's records matches the driver's license number and birth date of "Richard Allen Rolland II," as per records from the Bureau of Motor Vehicles admitted as Exhibit 12. Further, two bank tellers with Fifth Third Bank recognized Rolland from their dealings with him concerning transactions with the Bank in the early months of 2004. Both tellers also identified Rolland in pictures taken from the Bank's security tapes which showed Rolland standing at the bank teller counter with each of the testifying bank tellers. The automatic time stamp on one of the photographs showing Rolland at the bank teller counter coincides with a transaction for the withdrawal of $4,100.00 from account number 9651012586, the Richard Rolland account.[8]

---

8. The time stamp on the picture admitted as State's Exhibit 3 shows the date "2/26/04" and the time of "9:16:08A." A "teller transaction log" for February 26, 2004, shows that a hold on a transaction for the withdrawal of $4,100.00 was placed on account number 9651012586, the Richard Rolland account, at "09:17:22." State's Exhibit 5; State's Exhibit 6 at 15. It was explained that a "hold" is placed on an account at the time of the transaction in situations where a customer is cashing a check, depositing a check and receiving cash back on the transaction, or withdrawing cash and that all "holds" are recorded in the teller transaction log.

We acknowledge an inconsistency between State's Exhibits 1 and 2, pictures of Rolland standing at the teller counter on March 4, 2004 at approximately 1:00 in the afternoon, and State's Exhibit 4, a teller transaction log for March 4, 2004 which shows that a hold was placed on account number 9651012586, the Richard Rolland account, at approximately 2:00 p.m. The investigator testified and suggested that the discrepancy could possibly be explained by Daylight Saving Time ("DST"). However, DST would not have taken effect as of March 4. There may be some other explanation as to the discrepancy in the time stamp on the photographs and the time indicated in the teller log report, but we have not been provided with such.

Further, the jury could have considered the fact that Rolland never returned to his room at Ms. Rehse's boarding house, leaving his possessions behind, after the fraudulent activity on Rehse and Goodman's joint account was discovered. *See Dill v. State*, 741 N.E.2d 1230, 1232 (Ind.2001) (noting that although a flight instruction constitutes error, the jury may consider flight and related conduct in determining a defendant's guilt). After reviewing the record, we conclude that there was sufficient circumstantial evidence from which the jury could have reasonably inferred beyond a reasonable doubt that Rolland committed the offenses for which he was convicted.

The judgment of the trial court is affirmed.

KIRSCH, C.J., and DARDEN, J., concur.