**Pursuant to Ind.Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



FILED

Nov 26 2012, 9:45 am

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT:

**JAMISON J. ALLEN**
Lee & Fairman, LLP.
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**GEORGE P. SHERMAN**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| OLUWASANMI ANIMASHAUN, | ) | |
| | ) | |
| Appellant-Defendant, | ) | |
| | ) | |
| vs. | ) | No. 49A02-1203-CR-248 |
| | ) | |
| STATE OF INDIANA, | ) | |
| | ) | |
| Appellee-Plaintiff. | ) | |

APPEAL FROM THE MARION SUPERIOR COURT
The Honorable Grant W. Hawkins, Judge
The Honorable Christina Klineman, Master Commissioner
Cause No. 49G05-0912-FC-99959

**November 26, 2012**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**FRIEDLANDER, Judge**

Oluwasanmi Animashaun appeals her conviction of Criminal Conversion,[1] a class A misdemeanor, presenting the following issues for review:

1.    Did the trial court err in admitting documents into evidence as business records under Rule 803(6) of the Indiana Rules of Evidence?

2.    Was the evidence sufficient to support the conviction?

We affirm.

The facts favorable to the conviction are that Animashaun was employed between January 1, 2007 and July 16, 2010 at the law firm of Lee Cossell Kuehn and Love. In 2007, she applied for supplemental social security income benefits (SSI benefits) on behalf of her son, Oluwatobiloba Elijah Akinsete. She was informed that if she was untruthful in the application process she could be prosecuted for perjury. In conjunction with her request and subsequent receipt of benefits, Animashaun claimed on multiple occasions that she had no income. Based on the information that she provided, Animashaun began receiving SSI benefits. In fact, Animashaun's income from her law firm employment rendered her ineligible for SSI benefits.

At some point, social security personnel learned of Animashaun's job and terminated her SSI benefits. Based upon these basic facts, Animashaun was charged with welfare fraud, as a class C felony, and theft and two counts of perjury as class D felonies. Following a bench trial, she was convicted of the lesser included offense of conversion.

---

[1]   Ind. Code Ann. § 35-43-4-3 (West, Westlaw current with all 2012 legislation).

1.

At trial, the State offered Animashaun's social security records into evidence. These included an application for benefits that evidently was completed by Marcia McCluckie, a claims representative for the Social Security Administration (the SSA), who completed the form by entering information given to her by Animashaun during a phone call. Although Animashaun never signed the form, McCluckie personally met with Animashaun the next day to complete the application process. At that point, Animashaun showed McCluckie her driver's license, which confirmed the information provided over the phone the previous day with respect to Animashaun's name, date of birth, and social security number. When the State sought to introduce into evidence several exhibits related to the application,[2] Animashaun objected on hearsay grounds, claiming that Animashaun never verified that she was the one who spoke to McCluckie over the phone, and she did not sign the application that McCluckie filled out on her behalf. The trial court ruled that the document was admissible under the business records exception and that "defense's points go to the weight, not the admissibility" of the document. *Transcript* at 79. Animashaun contends this was error.

Our standard of review for the admissibility of evidence is well established. A trial court's decision whether to exclude evidence is accorded great deference on appeal, and we will reverse only for a manifest abuse of discretion that denies the defendant a fair trial.

---

[2] The documents in question include the following: State's Exhibit 1- Request to be Selected as Payee; State's Exhibit 2 - Application Summary for Supplemental Security Income - State's Exhibit 3 - Amendments to Summary Statement of Income and Resources; State's Exhibit 4 - Summary Statement of Income and Resources; State's Exhibit 5 - Redetermination Summary for Determining Continuing Eligibility for Supplemental Security Income Payments; and State's Exhibit 6 - Summary Statement of Income and

*Carpenter v. State*, 786 N.E.2d 696 (Ind. 2003). An abuse of discretion occurs when a decision is clearly against the logic and effect of the facts and circumstances before the trial court. *Id*. We review the admissibility of evidence by considering only the evidence in favor of the trial court's ruling and any unrefuted evidence in the defendant's favor. *Edelen v. State*, 947 N.E.2d 1024 (Ind. Ct. App. 2011).

Animashaun contends the trial court erred in determining that this evidence is admissible under the business records exception. Rule 803(6) sets out the business records exception and states, in relevant part:

> A memorandum, report, record, or data compilation, in any form, of acts, events, conditions, opinions, or diagnoses, made at or near the time by, or from information transmitted by, a person with knowledge, if kept in the course of a regularly conducted business activity, and if it was the regular practice of that business activity to make the memorandum, report, record, or data compilation, all as shown by the testimony or affidavit of the custodian or other qualified witness, unless the source of information or the method or circumstances of preparation indicate a lack of trustworthiness. The term "business" as used in this Rule includes business, institution, association, profession, occupation, and calling of every kind, whether or not conducted for profit.

Evid. R. 803(6).

The premise underlying this exception is that the reliability of material that fits within Evid R. 803(6) is assured because the record's maker relies on that record in the ordinary course of its business activities. *In re Termination of Parent-Child Relationship of E.T.*, 808 N.E.2d 639 (Ind. 2004). "'The 'regular course' of business 'must find its meaning in the inherent nature of the business in question and in the methods systematically employed for the conduct of the business as a business.'" *Id*. at 643 (quoting *Palmer v. Hoffman,* 318 U.S.

Resources at trial.

4

109, 115 (1943)). If an entity does not rely upon the record in question to perform its functions, it is not a business record within the meaning of Evid R. 803(6). *In re Termination of Parent-Child Relationship of E.T.*, 808 N.E.2d 639. In determining whether Evid. R. 803(6) applies, we examine "'the character of the records and their earmarks of reliability acquired from their source and origin and the nature of their compilation.'" *Id*. at 643 (quoting *Palmer v. Hoffman,* 318 U.S. at 114). The proponent may authenticate a business record pursuant to this exception by calling a witness who "has a functional understanding of the record keeping process of the business with respect to the specific entry, transaction, or declaration contained in the document." *Rolland v. State*, 851 N.E.2d 1042, 1045 (Ind. Ct. App. 2006). Germane to this appeal, such a witness need show only that the exhibit "was part of certain records kept in the routine course of business and placed in the records by one who was authorized to do so and who had personal knowledge of the transaction represented at the time of entry." *Id*. Unless there is a showing to the contrary, we presume records kept in the ordinary course of business have been placed there by those who have a duty to so record and have personal knowledge of the transaction represented by the entry. *Rolland v. State*, 851 N.E.2d 1042.

The evidence in question consists essentially of a completed application for SSI benefits and follow-up documents that were used periodically to verify that the information provided in the original application was still correct with an eye to continued eligibility for benefits. McCluckie was called at trial to authenticate the documents. She testified that she was the person who spoke with Animashaun over the phone and completed the initial application for benefits on Animashaun's behalf. This means that she had personal

5

knowledge of the transaction represented at the time of entry. *See id.* In her testimony, she demonstrated an understanding of the record-keeping process at the SSA with respect to the entries contained in the various exhibits. *See id.* She also testified that she was "the keeper of the records for such documents." *Transcript* at 69. Clearly, the SSA relies on records such as these exhibits in the ordinary course of its business activities. *See In re Termination of Parent-Child Relationship of E.T.*, 808 N.E.2d 639. We conclude that these exhibits constituted business records of the SSA and that they were sufficiently authenticated by McCluckie's testimony.

This does not end the matter, however. We understand that Animashaun's complaints are basically attributable to the fact that someone other than Animashaun manually completed the application by imputing information on a form that she was given by the caller – purportedly Animashaun – via telephone. It constitutes the primary evidence against Animashaun in that it contains what purports to be her claim that she did not have any income at a time when she was, in fact, gainfully employed. Animashaun attacks the application on several grounds. For instance, she claims that it was not verified that it was, in fact, Animashaun who spoke with McCluckie and supplied the information recorded on the form. Among other things, Animashaun also notes that the application is not signed, although it has a place for the applicant's signature. Although we understand Animashaun's concerns, it seems to us that these arguments do not implicate the documents' ultimate admissibility under Evid. R 803(6), but instead the weight they should be accorded by the fact-finder.

We note as an aside that the fact that the application does not contain Animashaun's

signature surely does impact the weight to be accorded the State's evidence relative to Animashaun's false claim that she did not have any employment income on the date in question. So, too, does the fact that McCluckie was unable to verify that the woman she spoke with when completing this application was, in fact, Animashaun. This is not to say, however, that there was *no* evidence to support the conclusion that Animashaun provided the information that McCluckie recorded on the application documents. First, the best inference from McCluckie's testimony is that McCluckie placed the call to Animashaun with respect to the initial claim for SSI benefits.[3] McCluckie indicated that someone at the hospital where Akinsete was staying contacted the Social Security Administration and provided "the child's name, the child's Social Security number, the child's address, the parents' name and a contact phone number." *Transcript* at 139. The trial transcript reflects that McCluckie telephoned the number provided by the hospital and filled out the application form by accurately inputting the information supplied by the person who answered the phone, who claimed she was Akinsete's mother, and also identified herself by name as Animashaun and provided a social security number. As a follow-up to the phone conversation, and apparently pursuant to instructions, Animashaun personally visited the appropriate SSA office the next day and provided identification in support of the application, and the social security number

---

[3] McCluckie stated:

> We got a lead, that means someone contacted us, either she did or the hospital contacted us in March of 2007, so April 11 of 2007 I contacted her to take an initial claim for supplemental security income for her child and I also took a representative payee application from her.

*Transcript* at 64.

7

and her name matched those that were provided the day before by the caller claiming to be Animashaun. Viewed as a whole, these facts permit a reasonable inference that Animashaun was the person who supplied the relevant information to McCluckie via telephone.

Be that as it may, we reiterate that the lack of a signature on the application, as well as the other alleged shortcomings of which Animashaun complains, goes to the weight of the documents, not their admissibility. Because, as explained above, the documents met all of the elements necessary for the admission of documentary evidence under Evid. R. 803(6), the trial court did not err in admitting them.

2.

Animashaun contends the evidence was insufficient to support the conviction. Our standard of reviewing challenges to the sufficiency of the evidence supporting a criminal conviction is well settled.

> When reviewing a claim that the evidence introduced at trial was insufficient to support a conviction, we consider only the probative evidence and reasonable inferences that support the trial court's finding of guilt. We likewise consider conflicting evidence in the light most favorable to the trial court's finding. It is therefore not necessary that the evidence overcome every reasonable hypothesis of innocence. Instead, we will affirm the conviction unless no reasonable trier of fact could have found the elements of the crime beyond a reasonable doubt.

*Gray v. State*, 957 N.E.2d 171, 174 (Ind. 2011). When considering a challenge to the sufficiency of the evidence, we neither reweigh the evidence nor assess the credibility of witnesses. *Turner v. State*, 953 N.E.2d 1039 (Ind. 2011).

The statute defining criminal conversion states: "A person who knowingly or intentionally exerts unauthorized control over property of another person commits criminal

8

conversion, a Class A misdemeanor." I.C. § 35–43–4–3(a). Viewed in a light most favorable to the conviction, there was evidence that, on multiple occasions, Animashaun falsely claimed that she did not receive employment income at a time when she was gainfully employed and earning income. Based upon this false information, Animashaun received SSI benefits that she would not have received had she been truthful about her employment. As such, Animashaun exerted unauthorized control over SSI funds to which she was not entitled.

Finally, we note Animashaun's claim that the conviction cannot stand in light of the fact that the trial court granted her motions for judgment on the evidence with respect to the two perjury counts, and found her not guilty with respect to the welfare fraud count. According to Animashaun, "[t]he Trial Court dismissed the perjury counts at the close of State's evidence and found Defendant not guilty of welfare fraud. Therefore, the Trial Court found there was insufficient evidence to find Ms. Animashaun knowingly caused the overpayment[.]" *Appellant's Brief* at 18. Ergo, according to Animashaun, the State failed to prove the requisite *mens rea*, i.e., that she "knowingly" exerted unauthorized control. Although it is couched in terms of the sufficiency of the evidence, an argument we rejected above, this argument is premised entirely upon the inconsistency between the conviction on this count and the acquittal of the other charges. As our Supreme Court has recently stated, "[j]ury verdicts in criminal cases are not subject to appellate review on grounds that they are inconsistent, contradictory, or irreconcilable."
*Beattie v. State*, 924 N.E.2d 643, 649 (Ind. 2010).

Judgment affirmed.

BROWN, J., and PYLE, J., concur.

9