## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Dec 31 2015, 10:14 am

*Kevin S. Smith*

CLERK
of the supreme court,
court of appeals and
tax court

---

ATTORNEY FOR APPELLANT

Zachary J. Stock
Zachary J. Stock, Attorney at Law. P.C.
Carmel, Indiana

ATTORNEYS FOR APPELLEE

Gregory F. Zoeller
Attorney General of Indiana

Monika Prekopa Talbot
Deputy Attorney General
Indianapolis, Indiana

---

# IN THE
# COURT OF APPEALS OF INDIANA

---

Tamara Fitzgerald,

*Appellant-Defendant,*

v.

State of Indiana,

*Appellee-Plaintiff*

December 31, 2015

Court of Appeals Case No.
49A02-1505-CR-366

Appeal from the Marion Superior
Court

The Honorable Mark D. Stoner,
Judge

Trial Court Cause No.
49G06-1408-FC-40962

**Robb, Judge.**

# Case Summary and Issues

[1] Following a jury trial, Tamara Fitzgerald was convicted of insurance fraud as a Class C felony and false informing as a Class B misdemeanor. Fitzgerald appeals, raising two issues for our review: (1) whether the trial court committed fundamental error by admitting certain records into evidence; and (2) whether her convictions violate the Double Jeopardy Clause of the Indiana Constitution. Concluding the trial court did not commit fundamental error and Fitzgerald's convictions do not constitute double jeopardy, we affirm Fitzgerald's convictions.

# Facts and Procedural History

[2] On February 11, 2009, Fitzgerald and her husband bought a 2000 Cadillac DeVille bearing the vehicle identification number ("VIN") 1G6KD54Y1YU237954. They purchased the vehicle in Virginia from Fitzgerald's sister, Yolanda Royal. Royal did not transfer the vehicle's certificate of title because she was unable to locate it. Instead, the parties executed a bill of sale. The vehicle remained registered in Virginia, in Royal's name, but was added to an Erie Insurance ("Erie") policy issued to Fitzgerald in June 2009.

[3] On June 16, 2011, Fitzgerald contacted the Indianapolis Metropolitan Police Department ("IMPD") to report the vehicle stolen. Fitzgerald told the police she left the vehicle parked at 30th Street and German Church Road the day

before with the key stuck in the ignition, and when she returned for the vehicle, it was gone. Fitzgerald completed a Verification of Stolen Vehicle Report, listing Royal as the vehicle's owner and noting "key stuck in the ignition." State's Exhibit 28.

[4]     Later that day, Fitzgerald filed a claim with Erie. She gave a recorded statement over the telephone and also submitted an Affidavit of Vehicle Theft. During the recorded statement, Fitzgerald told a claims adjuster she left the vehicle in a parking lot at 30th Street and German Church Road on June 15, 2011, and her husband discovered the vehicle was missing when he went to retrieve it the following day. Fitzgerald stated they promptly reported the theft to the police and provided the claims adjuster with the IMPD case number. Fitzgerald also stated she had only one set of keys for the vehicle and left the vehicle locked in the parking lot:

> Q.     Now how many sets of keys are there for the vehicle?
> R.     There was only one set.
> Q.     And where were those keys kept?
> R.     The keys are—my husband keeps the keys. They hang—
>          he hangs them up. He doesn't take them with him but he
>          has the keys.
> Q.     And that set of keys is accounted for now?
> R.     Yes.
>
> * * *
> Q.     And the vehicle was left locked?
> R.     Yes, it was locked.
> Q.     And the keys were?
> R.     I brought the key back.

Q. Okay.

R. The one that I used, yeah.

State's Ex. 7, at 6-7, 9.

[5] Fitzgerald advised the claims adjuster she was not the titled owner of the vehicle and provided the bill of sale for proof of ownership. When the claim was being processed, the claims adjuster contacted Fitzgerald to collect additional information about the keys. Fitzgerald told the claims adjuster the key was stuck in the ignition during that conversation. Notwithstanding the discrepancy in Fitzgerald's account, Erie settled the claim in July 2011 and sent Fitzgerald a check for $5,051.77. The check was enclosed in a letter stating Erie was withholding $1,200.00 from the settlement pending receipt of the vehicle's certificate of title. Fitzgerald deposited the check but never provided the certificate of title.

[6] In February 2014, Erie discovered another discrepancy with regard to Fitzgerald's claim. An Erie investigator consulted a national database that tracks insurance claims and scrap metal sales and realized "the vehicle appeared to have been sold as scrap approximately nine to ten days before the reported day of loss." Transcript at 84-85. A 2000 Cadillac Deville with the same VIN as the vehicle Fitzgerald reported stolen was sold to Integrity Metals ("Integrity") as scrap on June 6, 2011, over a week before Fitzgerald claims she left the vehicle in a parking lot. The investigator contacted Integrity directly and confirmed the vehicle had been sold as scrap on June 6, 2011, by Kenneth Long of Big Red's Discount Towing ("Discount Towing").

[7] Suspecting fraud, Erie referred the case to the Marion County Prosecutor's Office for further investigation. Thereafter, on August 25, 2014, the State charged Fitzgerald with Count I, insurance fraud, a Class C felony; Count II, theft, a Class D felony; and Count III, false informing, a Class B misdemeanor. A jury trial was held on March 4, 2015. Long testified Discount Towing buys cars to sell as scrap and is not in the business of towing cars to be repaired. Customers call and request pick up, and the Discount Towing office dispatches Long to tow the cars to the salvage yard. Customers are paid in cash, and Discount Towing does not maintain records of these transactions. Long recalled taking cars to Integrity on June 6, 2011, but he did not remember which cars or from whom the cars were purchased. Integrity's office manager, Heidi Kerstiens, also testified. Kerstiens testified to Integrity's business practices, and the State introduced records maintained by Integrity through Kerstiens' testimony. The records showed Long sold five vehicles to Integrity on June 6, 2011, including a 2000 Cadillac Deville, VIN 1G6KD54Y1YU237954.

[8] The jury found Fitzgerald guilty on all counts. The trial court merged Count I and Count II and entered judgment of conviction for insurance fraud and false informing. This appeal followed.

# Discussion and Decision

## I. Admission of Evidence

### A. Standard of Review

Fitzgerald contends the trial court erred by admitting Integrity's records into evidence. She argues the records constituted inadmissible hearsay because there was an insufficient foundation to admit them under the business records exception. *See* Ind. Evidence Rule 803(6). Fitzgerald concedes, however, she did not object to the admission of the records at trial. Therefore, unless she can show the trial court committed fundamental error by admitting the records, the issue is waived. *Stephenson v. State*, 29 N.E.3d 111, 118 (Ind. 2015).

"Fundamental error is an extremely narrow exception to the waiver rule where the defendant faces the heavy burden of showing that the alleged errors are so prejudicial to the defendant's rights as to make a fair trial impossible." *Ryan v. State*, 9 N.E.3d 663, 668 (Ind. 2014) (citation and internal quotation marks omitted). The error must be "so egregious and abhorrent to fundamental due process" that the trial judge should have acted, "irrespective of the parties' failure to object or otherwise preserve the error for appeal." *Whiting v. State*, 969 N.E.2d 24, 34 (Ind. 2012).

### B. Integrity's Records

Hearsay is an out-of-court statement offered into evidence to prove the truth of the matter asserted. Evid. R. 801(c). Hearsay is inadmissible unless it falls

under a recognized exception. Evid. R. 802. One such exception exists for records that satisfy the requirements of Evidence Rule 803(6), which provides,

> The following are not excluded by the rule against hearsay, regardless of whether the declarant is available as a witness:
>
> * * *
>
> **(6) Records of a Regularly Conducted Activity.** A record of an act, event, condition, opinion, or diagnosis if:
>> (A) the record was made at or near the time by—or from information transmitted by—someone with knowledge;
>> (B) the record was kept in the course of a regularly conducted activity of a business, organization, occupation, or calling, whether or not for profit;
>> (C) making the record was a regular practice of that activity;
>> (D) all these conditions are shown by the testimony of the custodian or another qualified witness, or by a certification that complies with Rule 902(11) or (12) or with a statute permitting certification; and
>> (E) neither the source of information nor the method or circumstances of preparation indicate a lack of trustworthiness.

Fitzgerald argues there was an insufficient foundation to admit Integrity's records under Evidence Rule 803(6), the business records exception.

[12] At trial, Kerstiens thoroughly explained the process of selling a vehicle to Integrity. First, the customer must present (1) a government-issued photo ID, and (2) either a valid salvage license or the vehicle's certificate of title. Licensed salvage dealers such as Discount Towing do not have to present a certificate of title in order to sell a vehicle as scrap. Then, the customer drives the vehicle

onto a scale. While on the scale, the vehicle is photographed, and Integrity's computer system records the weight. Once the weight is recorded, an employee checks the VIN and records that information in the Integrity computer system.[1] Finally, the vehicle is shredded, and the customer is paid. Every step of the process is recorded in Integrity's computer system, and each customer is photographed and assigned a unique customer number.

[13] Kerstiens testified these records are created in the regular course of Integrity's business, at or near the time of each transaction, and contain information entered into Integrity's computer system by a person with knowledge and a duty to report accurately. Through Kerstiens' testimony, the State admitted Exhibits 17 through 25. Exhibit 17 is a report that Kerstiens created on March 18, 2014, showing all of the transactions between Integrity and Discount Towing from January 2001 to March 2014. The report includes information such as the date and ticket number for each transaction, the amount paid, and details about the vehicles, including their make, model, year, and VIN. Exhibit 18 is a "Scale Purchase Ticket," stating Long sold five vehicles to Integrity on June 6, 2011, and certifying Long had the right to possess and sell these vehicles. Exhibit 19 is a "Payment Receipt," stating Integrity paid $2,252.50 for the five vehicles sold on June 6, 2011. The vehicles are not identified by make, model, year, or VIN on the ticket or the receipt. Exhibits 20 through 22 are

---

[1] Every vehicle has a unique, seventeen-character VIN that identifies the vehicle by make, model, and year. *See* Tr. at 92; State's Ex. 17. The VIN is listed on the vehicle's certificate of title and on the vehicle itself, usually in the window or on a door frame. Tr. at 100.

photographs of Long and the vehicles sold on June 6, 2011. Exhibits 23 through 25 show the information Integrity maintains about Long, including a copy of his commercial driver's license and a copy of his salvage license.

[14] Fitzgerald did not object to any of these exhibits at trial but argues the trial court committed fundamental error by admitting them because Kerstiens' testimony was an inadequate foundation for the business records exception. Specifically, Fitzgerald contends Kerstiens' testimony failed to establish the records were made by someone with knowledge, *see* Evid. R. 803(6)(A), because Kerstiens only testified to "what is typically done," and did not identify the specific employee who handled the transaction. Appellant's Brief at 9.

[15] We first note,

> The reliability of business records stems from the fact that the organization depends on them to operate, from the sense that they are subject to review, audit, or internal checks, from the precision engendered by the repetition, and from the fact that the person furnishing the information has a duty to do it correctly.

*Stahl v. State*, 686 N.E.2d 89, 92 (Ind. 1997). Therefore, the proponent of a business record can satisfy the requirements of Evidence Rule 803(6) "by calling a witness who has a functional understanding of the record keeping process of the business with respect to the specific entry, transaction, or declaration contained in the document." *Rolland v. State*, 851 N.E.2d 1042, 1045 (Ind. Ct. App. 2006). "The witness need not have personally made or filed the record or have firsthand knowledge of the transaction represented by it in order to

sponsor the exhibit." *Id.* Moreover, a sponsoring witness is not required to testify that she knows the person who recorded the information had personal knowledge of the transactions. *Payne v. State*, 658 N.E.2d 635, 645 (Ind. Ct. App. 1995), *trans. denied*. Records kept in the regular course of business are presumed to have been created by someone with knowledge, unless there is a showing to the contrary. *Id.*

[16] Fitzgerald concedes Integrity's records were kept in the regular course of business, and she points to no evidence showing the person who created the records lacked knowledge. We therefore disagree Kerstiens' testimony failed to establish the records were made by someone with knowledge. As to Exhibits 18 through 25, we conclude Kerstiens' testimony provided an adequate foundation for their admission under Evidence Rule 803(6). There was no error in admitting these exhibits, let alone fundamental error.

[17] But as to Exhibit 17, we conclude it does not satisfy the requirements of Evidence Rule 803(6). Exhibit 17 is a twenty-three-page report that Kerstiens created on March 18, 2014, showing all of the transactions between Integrity and Discount Towing from January 2001 to March 2014. It was not created at or near the time of each transaction. *See* Evid. R. 803(6)(A). However, we do not believe the trial court committed fundamental error by admitting the report. Pursuant to Evidence Rule 1006, a proponent may use a summary to prove the content of voluminous writings or recordings, as long as the underlying

documents are made available to the opposing party.[2]  Given the summary of the records was itself twenty-three pages long, the underlying records are likely so voluminous "that they cannot be conveniently examined in court."  Evid. R. 1006.  Accordingly, we find no fundamental error in the admission of Exhibit 17.

# II.  Double Jeopardy

## A. Standard of Review

[18]  Fitzgerald also contends her convictions for false informing and insurance fraud violate the Double Jeopardy Clause of the Indiana Constitution, which provides, "No person shall be put in jeopardy twice for the same offense."  Ind. Const. art. 1, § 14.  We review whether multiple convictions violate the Double Jeopardy Clause de novo.  *Jones v. State*, 976 N.E.2d 1271, 1275 (Ind. Ct. App. 2012), *trans. denied*.  Two convictions constitute the "same offense" for double jeopardy purposes "if, with respect to *either* the statutory elements of the challenged crimes *or* the actual evidence used to convict, the essential elements of one challenged offense also establish the essential elements of another challenged offense."  *Richardson v. State*, 717 N.E.2d 32, 49 (Ind. 1999) (emphasis in original).

---

[2] The State did not admit the records summarized in Exhibit 17, but Evidence Rule 1006 does not require this.  The underlying records must only be made available to opposing party, Evid. Rule 1006, and nothing in the record suggests Integrity's records were not made available to Fitzgerald.

## B. False Informing and Insurance Fraud

[19] Fitzgerald argues her convictions violate the actual evidence test because both offenses were proven by the fact that the Cadillac was sold as scrap on June 6, 2011. In order to find a double jeopardy violation under the actual evidence test, we must conclude there is a reasonable possibility that the evidentiary facts used by the factfinder to establish the essential elements of one offense may also have been used to establish *all* the essential elements of a second challenged offense. *Hines v. State*, 30 N.E.3d 1216, 1222 (Ind. 2015).

[20] Fitzgerald was convicted of false informing and insurance fraud. A person commits false informing if she "gives a false report of the commission of a crime or gives false information in the official investigation of the commission of a crime, knowing the report or information to be false . . . ." Ind. Code § 35-44-2-2(d)(1) (2007). A person commits insurance fraud when she "knowingly and with intent to defraud . . . makes, utters, presents, or causes to be presented to an insurer or an insurance claimant, a claim statement that contains false, incomplete, or misleading information concerning the claim . . . ." Ind. Code § 35-43-5-4.5(a)(1).

[21] Although we agree both offenses required the State to prove Fitzgerald lied about the Cadillac being stolen, we cannot conclude Fitzgerald's convictions violate the prohibition against double jeopardy. The fact that the Cadillac had been sold as scrap over a week before Fitzgerald claims she left the vehicle in a parking lot shows her account was fabricated. But the false informing conviction required the additional fact of Fitzgerald reporting the vehicle stolen

to the police. Likewise, it was Fitzgerald's act of filing a claim with Erie that established the essential elements of insurance fraud. Fitzgerald was not subjected to double jeopardy in this case. *See Hines*, 30 N.E.3d at 1221 ("The fact that the same evidence may have been used to establish a single element of each of two offenses does not constitute a double jeopardy violation . . . .").

## Conclusion

[22] The trial court did not commit fundamental error by admitting Integrity's records into evidence, and Fitzgerald's convictions do not violate the prohibition against double jeopardy. We therefore affirm Fitzgerald's convictions.

[23] Affirmed.

Barnes, J., and Altice, J., concur.