## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Sep 08 2017, 5:58 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Mark Small
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Tyler G. Banks
Deputy Attorney General
Indianapolis, Indiana

# IN THE
## COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Marques Ridley, *Appellant-Defendant,* <br><br> v. <br><br> State of Indiana, *Appellee-Plaintiff.* | September 8, 2017 <br><br> Court of Appeals Case No. 54A04-1701-CR-25 <br><br> Appeal from the Montgomery Circuit Court <br><br> The Honorable Harry A. Siamas, Judge <br><br> Trial Court Cause No. 54C01-1501-F5-152 |

**Barnes, Judge.**

## Case Summary

Marques Ridley appeals his convictions for one count of Level 5 felony dealing in a narcotic drug (heroin) and three counts of Level 6 felony dealing in a substance represented to be a controlled substance. We affirm.

## Issues

The issues before us are:

I.    whether the trial court erred in admitting the State laboratory's chain of custody certificate regarding the evidence samples; and

II.    whether there is sufficient evidence to support Ridley's convictions.

## Facts

On four occasions in 2014–September 23, 24, 29, and 30–the Crawfordsville Police Department in Montgomery County worked with a confidential informant ("CI") to purchase heroin from Ridley during controlled buys. On each occasion, Captain Kurt Knecht searched the CI, fitted the CI with a transmitter, gave the CI money for the transaction, and monitored the transaction. Police also photographed the CI and Ridley together. After each controlled buy, police again searched the CI, who no longer had the money, and who handed over bindles of purported controlled substances that he purchased from Ridley.

[4] Each sample was tested by forensic scientist Jenna Crawford of the Indiana State Police Laboratory ("laboratory"). The September 23 sample tested positive for heroin. The September 24, 29, and 30 samples did not contain any controlled substances.

[5] On January 25, 2015, the State charged Ridley with one count of Level 5 felony dealing in a narcotic drug (heroin) and three counts of Level 6 felony dealing in a substance represented to be a controlled substance. The State also filed and subsequently dismissed an habitual offender enhancement. Ridley was tried by jury on April 19 through April 20, 2016.

[6] At trial, Crawford testified as follows regarding the laboratory's evidence receipt and intake, tracking and case management, and analysis procedures:

> A. Yes. When a contributing agency brings evidence to our laboratory they'll complete a request for laboratory examination form. Upon going to the laboratory with this form an evidence clerk will then receive the evidence, insure [sic] that's [sic] it's in a sealed condition and assign it a unique laboratory number and item number. The evidence is then stored, it's determined that it's sealed, evidence needs to be sealed if it comes into our laboratory it needs to be packaged correctly as well. It will then be stored into a secure vault until an analyst such as myself would request it for analysis. I would then receive the evidence from the evidence clerk and then have my own secure location that I would leave any evidence that's in my custody, I perform my test, take a weight of the item if I'm able to and then once I complete my examination I'll then return the evidence back to one our evidence clerks. They will store it in a secure vault until the contributing agency that brought the evidence comes back to pick it up.

* * * * *

Q.     And do you recall the agency that brought these over for analysis to your laboratory?

A.     Yes, it was the Crawfordsville Police Department.

* * * * *

Q.     I want to show you what's been marked for identification purposes as State's Exhibit One and ask if you can identify that particular exhibit?

A.     Yes.  I recognize State's Exhibit One by the sticker on the evidence that states the laboratory file number fourteen I dash zero five eight zero nine.  The item number is zero zero one.  I have actually marked this laboratory number and the item number on the evidence myself in handwritten as well as my initials and the date that I received the evidence into my custody.  And then when I open the evidence and reseal it the seal that I create I will actually initial and put my permanent employee number over both sides of that seal and because this is a clear plastic bag I can actually see inside and there is a piece of tape that is also marked with the laboratory file number, the item number and my initials and permanent employee number.

* * * * *

Q.     And where was that item kept until you were able to perform that analysis?

A.     It was kept in our secured vault until I received it.

Q.     When you got it it was sealed?

A.     Yes.  When I receive evidence into my custody with that transfer from the evidence clerk to myself, I also ensure that the evidence is sealed.

Tr. pp. 79, 81.

Crawford testified that the laboratory maintains a computer system that tracks the location of evidence delivered to the lab by contributing agencies.  The following colloquy ensued between Crawford, the deputy prosecuting attorney, and counsel for Ridley after the State offered the chain of custody report generated by the computer system into evidence:

[Q]: Move to admit State's Twenty-Two.

MR. TANSELLE [counsel for Ridley]: Your honor, I don't think a proper foundation for twenty-two has been met.  I don't believe that the witness is a custodian of records who can testify that these are true and authentic business records of the company.  She certainly can testify to her knowledge of the chain of custody, but I don't believe that these are accurate records or not accurate records, but I'm sorry, but properly authenticated records that could be admissible in court.

Q. Did you provide those to my office?

A. Those documents are kept during the normal course of business and they were asked for and I provided them.

MR. TANSELLE: And if I could further inquire.  You are a, you said that you are what's your title again?

WITNESS: Forensic Scientist.

MR. TANSELLE: Thank you, Forensic Scientist. Are you also the custodian of records then?

WITNESS: Our laboratory keeps all records, it's in a computer system, so I have access to all those records that are in with each case that I work. So I'm able to pull up the chain of custody report for the cases that I work.

MR. TANSELLE: But you are not the custodian of records?

WITNESS: That is not my title no.

Tr. pp. 91-92. Counsel for Ridley renewed his objection to the chain of custody certificate, which was admitted over his objection.

The jury found Ridley guilty as charged. The trial court sentenced Ridley accordingly, and he now appeals.

## Analysis

### I. Admission of Evidence

Ridley argues that the trial court abused its discretion in admitting the chain of custody certificate into evidence.[1] We review the admission of evidence for an

---

[1] The State asserts that Ridley is improperly advancing a new issue on appeal that he did not present to the trial court. We agree, in part. *See Hitch v. State*, 51 N.E.3d 216, 219 (Ind. 2016) ("[A] defendant cannot raise new issues or arguments on appeal that were not presented to the trial court."). In his brief, Ridley contends, in part, that the chain of custody was defective and that the evidence was "possibly handled by numerous people." Appellant's Br. p. 20. At trial, however, defense counsel objected on grounds that the laboratory's testing methods were not scientifically reliable; the report was not authenticated; and Crawford was not the business

abuse of discretion. *Wilson v. State,* 765 N.E.2d 1265, 1272 (Ind. 2002). An abuse of discretion occurs where the decision is clearly against the logic and effect of the facts and circumstances. *Smith v. State,* 754 N.E.2d 502, 504 (Ind. 2001). In reviewing the admissibility of evidence, we consider only the evidence in favor of the trial court's ruling. *Whiteside v. State,* 853 N.E.2d 1021, 1025 (Ind. Ct. App. 2006).

[10] Ridley first argues that the laboratory's chain of custody report was hearsay and did not meet the requirement of the business records exception. Hearsay is a "statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Evid. R. 801(c). Hearsay is not admissible unless it falls within one of the exceptions provided in the evidence rules. Evid. R. 802. The business records exception to the hearsay rule states, in part:

> A memorandum, report, record, or data compilation, in any form, of acts, events, conditions, opinions, or diagnoses, made at or near the time by, or from information transmitted by, a person with knowledge, if kept in the course of a regularly conducted business activity, and if it was the regular practice of that business activity to make the memorandum, report, record, or data compilation, all as shown by the testimony or affidavit of the custodian or other

records custodian. To the extent that Ridley now asserts a new issue on appeal, that issue is waived. We will only address Ridley's hearsay and authentication claims.

qualified witness, unless the source of information or the method or circumstances of preparation indicate a lack of trustworthiness.

Evid. R. 803(6). "'To admit business records pursuant to this exception, the proponent of the exhibit may authenticate it by calling a witness who has a functional understanding of the record-keeping process of the business with respect to the specific entry, transaction, or declaration contained in the document.'" *Houston v. State,* 957 N.E.2d 654, 658 (Ind. Ct. App. 2011) (quoting *Rolland v. State,* 851 N.E.2d 1042, 1045 (Ind. Ct. App. 2006)), *trans. denied.* The witness need not have personally made or filed the record or have firsthand knowledge of the transaction represented by it to sponsor the exhibit. *Id.*

[11] Ridley contends that the State failed to demonstrate that Crawford had personal knowledge of the transaction represented within the chain of custody report. We disagree. Crawford testified that the chain of custody certificate was generated in the ordinary course of the laboratory's business by the computer system that tracks the chain of custody, from the time the evidence enters the laboratory until it leaves, for each evidence sample that is delivered to the laboratory for testing; and maintains all such records in a computer system such that the chain of custody records are accessible to the laboratory's forensic scientists. *See* Tr. p. 92 ("So I'm able to pull up the chain of custody report for the cases that I work."). Based on the foregoing testimony, Crawford demonstrated a functional understanding of the recordkeeping process of the

laboratory regarding chain of custody. *See Houston,* 957 N.E.2d at 658. The trial court properly admitted the chain of custody report as a business record.

[12] Ridley also argues that the chain of custody report was not properly authenticated. "The requirement of authentication or identification as a condition precedent to admissibility is satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims." *Davenport v. State*, 749 N.E.2d 1144, 1148 (Ind. 2001). Absolute proof of authenticity is not required. *In re Paternity of B.B.,* 1 N.E.3d 151, 156 (Ind. Ct. App. 2013). When evidence establishes a reasonable probability that an item is what it is claimed to be, the item is admissible. *Id*. Indiana Evidence Rule 901(b) provides "[b]y way of illustration only, and not by way of limitation, the following are examples of authentication or identification conforming with the requirements of this rule" and includes "(9) Evidence About a Process or System."

[13] At trial, Crawford testified at-length regarding the laboratory's processes for intake, labeling, securing, maintaining chain of custody records, analysis, preparing reports, and returning tested evidence to the contributing agencies. Her testimony established the laboratory's "process or system." *See* Ind. Evid. R. 901(b). Therefore, the chain of custody report was properly authenticated and properly admitted into evidence by the trial court.

### II. Sufficiency of the Evidence

[14] Ridley argues there is insufficient evidence to support his convictions.[2] When reviewing a claim of insufficient evidence, we neither reweigh evidence nor judge the credibility of witnesses. *Rutherford v. State,* 866 N.E.2d 867, 871 (Ind. Ct. App. 2007). We consider only the evidence favorable to the judgment and any reasonable inferences to be drawn therefrom. *Glotzbach v. State,* 783 N.E.2d 1221, 1226 (Ind. Ct. App. 2003). We will affirm a conviction unless we conclude that no reasonable fact-finder could find the elements of the crime proven beyond a reasonable doubt. *Stokes v. State,* 922 N.E.2d 758, 763 (Ind. Ct. App. 2010), *trans. denied*.

[15] Ridley contends that the evidence was insufficient to prove that the CI was adequately searched and monitored during the controlled buys. Specifically, Ridley contends that the CI was "out of the detective's sight" during each controlled buy and "could have recovered supposed contraband he previously had hidden and hidden the money given to him by the detective." Appellant's Br. p. 23. He also claims that the police "never saw an actual exchange take place"; that none of the police-issued controlled buy money was recovered from

---

[2] Ridley's sufficiency argument is partly predicated upon the purported inadmissibility of the chain of custody report, which we have found was properly admitted. He contends that the only bindle that contained heroin should never have been admitted into evidence because the chain of custody was defective. Absent the bindle containing heroin, Ridley contends, insufficient evidence supports his conviction on count 1. The "defective" chain of custody, he argues, also calls into question whether "the other packages sent to the lab could have been mixed or otherwise mistaken for other packages." Appellant's Br. p. 23.

him; and that the CI had previously been convicted of a crime involving dishonesty. *See* Appellant's Br. p. 23.

[16] A properly conducted controlled buy will permit an inference that the defendant had prior possession of a controlled substance. *Watson v. State,* 839 N.E.2d 1291, 1293 (Ind. Ct. App. 2005). We have described a controlled buy as follows:

> A controlled buy consists of searching the person who is to act as the buyer, removing all personal effects, giving him [of her] money with which to make the purchase, and then sending him [or her] into the residence in question. Upon his [or her] return he [or she] is again searched for contraband. Except for what actually transpires within the residence, the entire transaction takes place under the direct observation of the police. They ascertain that the buyer goes directly to the residence and returns directly, and they closely watch all entrances to the residence throughout the transaction. *Id.* A pat-down search of the CI or buyer is sufficient, and a strip search or complete cavity search is not necessary.

*Id*.

[17] At trial, the CI and Captain Knecht testified that on four separate occasions, Ridley sold bindles of purported narcotics to a police CI. Each controlled buy transaction was conducted under police surveillance; the CI was searched before and after each controlled buy; the CI was given money before each drug buy; after each controlled buy, the CI delivered purported drug bindles obtained from Ridley to the police—including one that was found to contain heroin; that the CI no longer had the buy money after each encounter with Ridley. The

State also introduced audio recordings of conversations between Ridley and the CI before and during the controlled buys as well as contemporaneous photographs of Ridley and the CI.

[18] Ridley's arguments—that that the CI was inadequately searched or monitored; that the police did not witness actual exchanges; that controlled buy money was not recovered; and that the CI had a history of dishonesty—are clear requests for us to assess the credibility of witnesses and to reweigh the evidence, which we cannot and will not do. *See Rutherford,* 866 N.E.2d at 871. The evidence was sufficient to support Ridley's convictions.

## Conclusion

[19] The trial court did not abuse its discretion in admitting the chain of custody certificate. Sufficient evidence exists to support Ridley's convictions. We affirm.

[20] Affirmed.

Baker, J., and Crone, J., concur.