

**FILED**

Nov 10 2016, 8:42 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Yvette M. LaPlante
Keating & LaPlante, LLP
Evansville, Indiana

ATTORNEYS FOR APPELLEE

Gregory F. Zoeller
Attorney General of Indiana

Chandra K. Hein
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| William C. Williams, <br> *Appellant-Defendant,* <br><br> v. <br><br> State of Indiana, <br> *Appellee-Plaintiff.* | November 10, 2016 <br><br> Court of Appeals Case No. <br> 82A04-1602-CR-295 <br><br> Appeal from the Vanderburgh <br> Superior Court <br><br> The Honorable Leslie C. Shively, <br> Judge <br><br> Trial Court Cause No. <br> 82D01-1308-FB-1047 |

**Vaidik, Chief Judge.**

# Case Summary

William C. Williams was charged with two counts of Class B felony operating a vehicle with a schedule I or II controlled substance in his blood causing death. One count was based on having marijuana in his blood, and the other count was based on having methamphetamine in his blood. The jury convicted Williams of both counts. Williams now appeals his methamphetamine-related conviction only. Specifically, Williams contends that the State failed to establish a chain of custody for his blood sample so as to allow the admission of the results showing that his blood sample tested positive for methamphetamine. In order to establish the chain of custody for Williams' blood sample, the State relied heavily on Exhibit 65, which the trial court admitted under the business-records exception to the hearsay rule. Williams, however, claims that the trial court abused its discretion in admitting Exhibit 65 because the State did not properly authenticate it.

We agree that the State did not properly authenticate Exhibit 65 either by a certification that complied with Indiana Evidence Rule 902(11) or by a records custodian who testified that the records were made at or near the time by—or from information transmitted by—someone with knowledge and that they were kept by the lab in the ordinary course of business. Without Exhibit 65, the State cannot establish the chain of custody for the sample of Williams' blood that tested positive for methamphetamine. We therefore reverse Williams' conviction based on having methamphetamine in his blood.

# Facts and Procedural History

[3] Around 8:00 p.m. on August 6, 2013, Williams was driving his motorcycle with his girlfriend, Nancy Parsons, as his passenger. They had been at a funeral home in Evansville for Williams' sister's viewing and were on their way to go line dancing when Williams ran into the back of a van that was stopped at an intersection. Nancy was ejected from the motorcycle and later died from her injuries. Williams was transported to the hospital, where he consented to a blood draw. The Indiana State Department of Toxicology tested Williams' blood, and it tested positive for THC. The Department of Toxicology sent a sample of Williams' blood to NMS Labs in Pennsylvania for additional testing. NMS Labs issued a toxicology report showing that Williams' blood sample tested positive for methamphetamine.[1] *See* Ex. 65.

[4] The State charged Williams with Count I: Class B felony operating a vehicle with a Schedule I or II controlled substance (marijuana) in his blood causing death and Count II: Class B felony operating a vehicle with a Schedule I or II controlled substance (methamphetamine) in his blood causing death.[2] At trial, Williams testified that he did not know how methamphetamine could have been in his blood and objected to the admission of State's Exhibit 65, which is a 192-page "Litigation Support Package" from NMS Labs containing, among

---

[1] This testing also showed the presence of amphetamine, but only methamphetamine is relevant to this case.

[2] The State also charged Williams with operating a vehicle while intoxicated causing death, but the trial court granted Williams' motion for a directed verdict on this count after the State's case in chief.

other documents, the toxicology report that shows his blood sample tested positive for methamphetamine and the chain of custody for his blood sample. Tr. p. 233-247, 307. Although all 192 pages were admitted into evidence, only two pages—the actual toxicology report—were submitted to the jury.[3] Williams, however, admitted smoking marijuana two days before the accident and did not object to the toxicology report from the Department of Toxicology showing that his blood tested positive for THC. *Id.* at 132, 300; Ex. 63. The jury convicted Williams of both counts, and the trial court sentenced him to eight years with two years suspended to probation on each count, to be served concurrently.

[5] Williams now appeals his methamphetamine-related conviction only.[4]

# Discussion and Decision

[6] Williams contends that the State failed to establish a chain of custody for his blood sample "so as to allow the admission of the results of tests showing it contained methamphetamine." Appellant's Br. p. 10. Regarding the chain of custody for fungible evidence, including blood samples, the State bears the burden of giving reasonable assurances that the evidence remained in an undisturbed condition as it passed through various hands. *Troxell v. State*, 778

---

[3] All 192 pages are labeled Exhibit 65(B), while the two pages are labeled Exhibit 65(A).

[4] Williams says he is challenging both convictions; however, Exhibit 65 concerns only methamphetamine (Count II). Williams does not challenge Exhibit 63, which concerns only marijuana (Count I).

N.E.2d 811, 814 (Ind. 2002). The State need not establish a perfect chain of custody, and once the State strongly suggests the exact whereabouts of the evidence, any gaps go to the weight of the evidence and not to its admissibility. *Id.*

In order to establish the chain of custody for Williams' blood sample, the State relied heavily on Exhibit 65, *see* Appellee's Br. p. 16, which the trial court admitted under the business-records exception to the hearsay rule, *see* Tr. p. 233-47. Williams argues, however, that the trial court abused its discretion in admitting Exhibit 65 because the State did not properly authenticate it.

Indiana Evidence Rule 902(11) allows the self-authentication of business records that meet the requirements of Indiana Evidence Rule 803(6), the business-records exception to the hearsay rule, as shown by a certification under oath from a business records custodian or another qualified person. Evidence Rule 902(11) provides:

> The following items of evidence are self-authenticating; they require no extrinsic evidence of authenticity in order to be admitted:
>
> \* \* \* \* \*
>
> **(11) Certified Domestic Records of a Regularly Conducted Activity.** Unless the source of information or the circumstances of preparation indicate a lack of trustworthiness, the original or a copy of a domestic record *that meets the requirements of Rule 803(6)(A)-(C), as shown by a certification under oath of the custodian or another qualified person*.

(Emphasis added). The certification should set forth the signer's qualifications and be notarized in order to avoid any issues concerning the identity of the person who signed it. *See* 13B Robert L. Miller, Jr., Indiana Practice, *Courtroom Handbook on Indiana Evidence*, Rule 902 (2015-16 ed.).

[9] Thus, for a document to be self-authenticated under Evidence Rule 902(11), the proponent must show that the requirements of the business-records exception to the hearsay rule are met. Those requirements are:

> (A) the record was made at or near the time by—or from information transmitted by—someone with knowledge;
>
> (B) the record was kept in the course of a regularly conducted activity of a business, organization, occupation, or calling, whether or not for profit;
>
> (C) making the record was a regular practice of that activity;
>
> (D) *all these conditions are shown by the testimony of the custodian or another qualified witness, or by a certification that complies with Rule 902(11) or (12)* or with a statute permitting certification; and
>
> (E) neither the source of information nor the method or circumstances of preparation indicate a lack of trustworthiness.

Ind. Evidence Rule 803(6).

[10] Here, the Certification of Authenticity for Exhibit 65 submitted by the State provides in relevant part:

I certify that the documents (**192** pages) contained in this litigation support package are true and accurate copies of the reported data generated in the normal course of business by employees of NMS Labs, and maintained in the files of this laboratory.

A complete, identical set of the attached records is maintained at NMS Labs.

*Note:* Edited/redacted information (numbers & names) in the documentation is pertaining to other patient samples in the same instrument run. It is not pertaining to this case and intended to protect health information of patients not related or relevant to this case.

In witness whereof, I hereunto set my hand and official seal.

_____     _____
Pennsylvania Notary                                          Date
                                                                  10-13-15

Seal:     COMMONWEALTH OF PENNSYLVANIA
                        NOTARIAL SEAL
          JANINE GOLASZEWSKI, Notary Public
          Upper Moreland Twp., Montgomery County
          My Commission Expires August 21, 2019

[11]     The Certification of Authenticity is deficient because it contains only a notary signature as "witness." There is no signature by a records custodian or another qualified person,[5] and the certification does not set forth the qualifications of the purported records custodian or other qualified person. Moreover, the certification does not show that the records meet the requirements of Evidence Rule 803(6)(A)-(C), that is, that they were made at or near the time by—or from information transmitted by—someone with knowledge and that they were made and kept by the lab in the ordinary course of business. Accordingly, the Certification of Authenticity is insufficient to authenticate Exhibit 65 pursuant to Evidence Rule 902(11).

---

[5] In addition, the Certification of Authenticity was not made under the penalties of perjury. *See Speybroeck v. State,* 875 N.E.2d 813, 820 n.7 (Ind. Ct. App. 2007), *reh'g denied*; *In re Paternity of H.R.M.*, 864 N.E.2d 442, 448 (Ind. Ct. App. 2007).

[12] Alternatively, the State argues that it properly authenticated Exhibit 65 by the testimony of NMS Labs analyst Jennifer Turri. To admit business records this way, the proponent of the exhibit may call a witness who has a functional understanding of the record-keeping process of the business with respect to the specific entry, transaction, or declaration contained in the document. *Rolland v. State*, 851 N.E.2d 1042, 1045 (Ind. Ct. App. 2006). The sponsor of an exhibit need not have personally made it, filed it, or have firsthand knowledge of the transaction represented by it; rather, the sponsor need only show that the exhibit was part of certain records kept in the routine course of business and placed in the records by one who was authorized to do so and who had personal knowledge of the transaction represented at the time of entry. *Embrey v. State,* 989 N.E.2d 1260, 1264-65 (Ind. Ct. App. 2013); *see also Sandleben v. State*, 22 N.E.3d 782, 795 (Ind. Ct. App. 2014) ("[A] sponsor must still testify about how the record was made, who filed it, and that the person who filed it was both authorized to do so and had personal knowledge of the transaction."), *trans. denied*.

[13] Here, Turri—an analyst at NMS Labs, not a records custodian—testified that she was the analyst who tested Williams' blood, that she came up with a finding, and that it is common to log findings in a report. She then identified Williams' toxicology report, which comprises only two pages of the 192-page Exhibit 65. Turri explained that she did not prepare Williams' toxicology report. Rather, toxicology reports are computer generated after results are submitted through NMS's laboratory information system. Tr. p. 233; *see also id.*

at 234 ("How it works is after we generate our results . . ., it's all electronic. . . . I don't physically make this report. But this is how the company does it.").

[14] Turri's testimony, however, only partially explains how the two-page toxicology report was created (that is, by computer) and does not show that the record was made at or near the time by—or from information transmitted by—someone with knowledge and that it was kept by the lab in the ordinary course of business. *See* Evid. R. 803(6) ("all these conditions [must be] shown by the testimony of the custodian or another qualified witness . . . ."). In addition, Turri's testimony does not address the other 190 pages of Exhibit 65, which include the critical chain-of-custody evidence for Williams' blood sample. Turri's testimony, therefore, does not authenticate Exhibit 65. Without Exhibit 65, the State cannot establish the chain of custody for Williams' blood sample.

[15] Anticipating our conclusion that the State failed to establish the chain of custody for Williams' blood sample, the State "requests that [we] affirm Williams' conviction on count I, causing death when operating a motor vehicle with" marijuana in his blood. Appellee's Br. p. 20 n.9. Accordingly, we reverse Williams' conviction on Count II, which is based on the methamphetamine evidence, and affirm Williams' conviction on Count I, which is based on the unchallenged marijuana evidence.[6]

---

[6] In light of this result, we do not address Williams' argument that he could be sentenced on only Count I or Count II because "only one accident and one death was involved." Appellant's Br. p. 16.

Reversed in part.

Baker, J., and Najam, J., concur.