## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**

Mar 27 2020, 8:54 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Talisha R. Griffin
Marion County Public Defender Agency
Appellate Division
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Myriam Serrano
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Justin Ross Tomlinson,

*Appellant-Defendant,*

v.

State of Indiana,

*Appellee-Plaintiff.*

March 27, 2020

Court of Appeals Case No.
19A-CR-2640

Appeal from the Marion Superior Court

The Honorable Christina R. Klineman, Judge

Trial Court Cause No.
49G17-1909-F6-37330

**Bailey, Judge.**

# Case Summary

[1]  Justin Tomlinson ("Tomlinson") appeals his conviction of invasion of privacy, enhanced to a Level 6 felony.[1]  We affirm.

# Issues

[2]  Tomlinson raises the following two restated issues on appeal:

1.  Whether the trial court abused its discretion when it denied Tomlinson's request to admit two exhibits into evidence.

2.  Whether the State presented sufficient evidence to support his conviction.

# Facts and Procedural History

[3]  In September of 2019, Tomlinson was charged with domestic battery and incarcerated in the Marion County Jail.  On September 20, 2019, a no contact order was issued prohibiting Tomlinson from having contact with his wife, Tracy Tomlinson ("Tracy").  On September 22, at 8:56 a.m., Tomlinson used his inmate pin number to make a telephone call from the Marion County Jail.  That call was recorded.  On September 23, the no contact order was lifted.  At 4:45 p.m. on September 23, Tomlinson again used his inmate pin number to

---

[1]  Ind. Code § 35-36-1-15.1(a)(11).

make a telephone call to the same telephone number he had called the day before. The September 23 phone call was also recorded.

[4] Based on the telephone call Tomlinson made on September 22, on September 23 the State charged Tomlinson with invasion of privacy, as a Class A misdemeanor, and also filed an Information alleging that Tomlinson had a previous unrelated conviction that would elevate the misdemeanor to a Level 6 felony.

[5] On October 10, the court held a bench trial. Tracy testified that she did not have a telephone conversation with Tomlinson on September 22. She testified that she was at work from 6:22 a.m. to 5:00 p.m. on September 22 and her employer does not allow its employees to have their cellular telephones inside the workplace. During Tracy's testimony, Tomlinson attempted to admit into evidence three documents—Exhibits A, B, and C. Tracy testified that Defendant's Exhibit A was an employment record from Amazon that showed her "hourly rate, [her] work days[,] and[,] for September 22nd[, her] clock-in at the start of shift, [her] clock-out for lunch, [her] return from lunch, as well as [her] end of shift, and it is notarized and signed by Sherita Edge, [the] head HR lady." Tr. at 8. Tracy testified that Defendant's Exhibit B was "a print[] out from the Amazon computer at work" showing her "clock-in and clock-out" on September 22, 2019. Id. at 8-9. And Tracy testified that Defendant's Exhibit C was Amazon's "phone policy stating that [its employees] cannot have any electronic devices whatsoever inside the building." Id. at 9. The State objected to the admission of Defendant's Exhibits A through C on the grounds that they

lacked a proper foundation. The trial court sustained the State's objection as to Exhibits A and B, but overruled its objection to Exhibit C, which was admitted into evidence.

[6] Per stipulation of the parties, the State entered into evidence and played for the court its Exhibit 2, which consisted of the audio recordings of Tomlinson's telephone conversations from jail on September 22 and 23. In the September 22 conversation, which was two minutes long, Tomlinson refers to the person he called as "T.T." Ex. at 16. In the September 23 conversation, Tomlinson repeatedly refers to the person he called as "Tracy" or "Trace." *Id*.

[7] Two police officers also testified at the bench trial. Indianapolis Metropolitan Police Department ("IMPD") Detective Steven Renzulli ("Det. Renzulli") testified that he was familiar with Tracy's voice, having spoken with her before for over three minutes and having reviewed the recording of that prior conversation. He testified that, on September 23, he listened "multiple times" to the recordings of his prior conversation with Tracy and the recordings in State's Exhibit 2. Tr. at 16. He compared those recordings and recognized Tracy's voice as the person Tomlinson was speaking with in each of the recorded telephone conversations in State's Exhibit 2. Det. Renzulli also testified that Tomlinson had called the same telephone number on each date, and that the number he called was the telephone number the IMPD had in their records for Tracy. IMPD Officer Jesse Darling ("Officer Darling") testified that he also was familiar with Tracy and her voice from having listened to her speak with a medic and a reporting officer on September 9, 2019, for a total of

approximately ten to fifteen minutes. Officer Darling testified he had listened to the recordings of the two telephone conversations in State's Exhibit 2 and that it was Tracy's voice on each of those recordings. He testified that he was "certain" Tomlinson's September 22 telephone call was to Tracy. Tr. at 21.

[8] The trial court found Tomlinson guilty of invasion of privacy, as a Class A misdemeanor. It also found that he had a prior conviction and, therefore, sufficient evidence to support the elevation of the crime to a Level 6 felony. The court sentenced Tomlinson to a term of 180 days, with 136 days suspended. Tomlinson had a credit of forty-four days already served. This appeal ensued.

# Discussion and Decision

## Exclusion of Exhibits

[9] Tomlinson challenges the trial court's decision to exclude from evidence his proffered Exhibits A and B. We review the admission or exclusion of evidence for an abuse of discretion, and we will reverse the trial court's decision only when its action is clearly against the logic and effect of the facts and circumstances before it. *E.g.*, *Speybroeck v. State*, 875 N.E.2d 813, 818 (Ind. Ct. App. 2007).

[10] Tomlinson attempted to introduce Exhibits A and B through Tracy—i.e., the sponsoring witness—who testified that the documents in each of those exhibits were records from her employer, Amazon. Under Indiana Rule of Evidence

803(6), a business record may be admissible as an exception to the rule against hearsay if:

> (A) the record was made at or near the time by—or from information transmitted by—someone with knowledge;

> (B) the record was kept in the course of a regularly conducted activity of a business, organization, occupation, or calling, whether or not for profit;

> (C) making the record was a regular practice of that activity;

> (D) all these conditions are shown by the testimony of the custodian or another qualified witness, or by a certification that complies with Rule 902(9) or (10) or with a statute permitting certification; and

> (E) neither the source of information nor the method or circumstances of preparation indicate a lack of trustworthiness.

[11]     To properly lay a foundation for the admission of a business record,

> the proponent of the exhibit may call a witness who has a functional understanding of the record-keeping process of the business with respect to the specific entry, transaction, or declaration contained in the document. *Rolland v. State*, 851 N.E.2d 1042, 1045 (Ind. Ct. App. 2006). The sponsor of an exhibit need not have personally made it, filed it, or have firsthand knowledge of the transaction represented by it; rather, the sponsor need only show that the exhibit was part of certain records kept in the routine course of business and placed in the records by one who was authorized to do so and who had personal knowledge of the transaction represented at the time of entry. *Embrey v. State*, 989 N.E.2d 1260, 1264–65 (Ind. Ct. App.

2013); *see also Sandleben v. State*, 22 N.E.3d 782, 795 (Ind. Ct. App. 2014) ("[A] sponsor must still testify about how the record was made, who filed it, and that the person who filed it was both authorized to do so and had personal knowledge of the transaction."), *trans. denied*.

*Williams v. State*, 64 N.E.3d 221, 225 (Ind. Ct. App. 2016).

[12] Tracy testified to none of the above regarding Defendant's Exhibits A and B. Regarding Exhibit A, she testified only that it was "an employment record from Amazon" which showed her hourly rate, work days, and the times at which she clocked in and out for her shift and her lunch on September 22, 2019. Tr. at 8. She noted that the document was "notarized and signed by Sherita Edge, our head HR lady." *Id*. Regarding Exhibit B, Tracy testified only that it was "printed out from the Amazon computer at work" and showed the times at which she clocked in and out for her shift and her lunch on September 22, 2019. *Id*. at 9.[2] Tracy provided no testimony regarding how the records were made, who filed them, that the person who filed them was authorized to do so and had personal knowledge of the transactions, and that the records were kept in the routine course of business. Therefore, the trial court did not abuse its discretion when it refused to admit Defendants' Exhibits A and B into evidence.

---

[2] In response to the court's additional questioning, Tracy also stated as to Exhibit B, "I printed [it] out at the computer at work, but I guess it wasn't uhm updated at the time, so HR got that more accurate and official from their system. I notice there's like a two (2) minute differential or something like that." *Id*. at 9-10.

Moreover, even if the court had erred in denial the admission of the exhibits, that error was harmless.

> When evidence is erroneously excluded, reversal is only required if the error relates to a material matter or substantially affects the rights of the parties. [*Farris v. State*, 818 N.E.2d 63, 67 (Ind. Ct. App. 2004), *trans. denied*.] In determining whether an error is harmless, we "must assess the probable impact of that evidence upon the jury." *Swingley v. State*, 739 N.E.2d 132, 134 (Ind. 2000). Where the wrongfully excluded testimony is merely cumulative of other evidence presented, its exclusion is harmless error. *Sylvester v. State*, 698 N.E.2d 1126, 1130 (Ind. 1998), *reh'g denied*.

*Hill v. State*, 51 N.E.3d 446, 450 (Ind Ct. App. 2016).

Here, Defendant's Exhibits A and B were cumulative of Tracy's relevant testimony; that is, she testified as to the times she was at work on September 22, 2019.[3] Therefore, any error as to the exclusion of those exhibits was harmless.

## Sufficiency of the Evidence

Tomlinson challenges the sufficiency of the evidence to support his conviction. Our standard of review of the sufficiency of the evidence is well-settled.

> When an appellate court reviews the sufficiency of the evidence needed to support a criminal conviction, it neither reweighs evidence nor judges the credibility of witnesses. *Bailey v. State*, 907 N.E.2d 1003, 1005 (Ind. 2009). The appellate court only

---

[3] Exhibit A also included Tracy's salary. However, that information was not relevant and the exhibit was not offered for the purposes of proving her salary.

considers "the evidence supporting the judgment and any reasonable inferences that can be drawn from such evidence." *Id.* (quoting *Henley v. State*, 881 N.E.2d 639, 652 (Ind. 2008)). A conviction will be affirmed if there is substantial evidence of probative value supporting each element of the offense such that a reasonable trier of fact could have found the defendant guilty beyond a reasonable doubt. *Bailey*, 907 N.E.2d at 1005. A [determination] of guilt may be based upon an inference if reasonably drawn from the evidence. *See Drane v. State*, 867 N.E.2d 144, 147 (Ind. 2007).

*Tin Thang v. State*, 10 N.E.3d 1256, 1258 (Ind. 2014).

[16] Thus, it is not necessary that the evidence

overcome every reasonable hypothesis of innocence; … *Drane v. State*, 867 N.E.2d 144 (Ind. 2007). Accordingly, the question on appeal is whether the inferences supporting the [judgment] were reasonable, not whether other, "more reasonable" inferences could have been drawn. *Thompson v. State*, 804 N.E.2d 1146, 1150 (Ind. 2004). Because reaching alternative inferences is the function of the trier of fact, we may not reverse a conviction merely because a different inference might plausibly be drawn from the evidence. [*Id.*].

*Jones v. State*, 22 N.E.3d 877, 879 (Ind. Ct. App. 2014).

[17] To support Tomlinson's conviction of invasion of privacy, as a Class A misdemeanor, the State was required to show that he "knowingly or intentionally violated an order issued under Indiana Code Section 35-33-8-3.2." I.C. § 35-46-1-15.1(a)(11). An order issued under Indiana Code Section 35-33-8-3.2(a)(4) is one which requires the defendant to refrain from any direct or

indirect contact with an individual. The invasion of privacy offense is elevated to a Level 6 felony "if the person has a prior unrelated conviction for an offense." I.C. § 35-46-1-15.1(a). Tomlinson does not dispute that he had a prior unrelated conviction or that a no contact order as to Tracy was in effect on September 22, 2019. Rather, he contends only that the evidence was insufficient to show that he spoke with Tracy in his September 22 telephone call from the jail.

[18] The State presented testimonial and audio evidence that Tomlinson called Tracy on September 22, in violation of the no contact order. The audio evidence consisted of the two recordings of Tomlinson's telephone calls from jail on September 22 and 23, which were played for the court. Two police officers testified that they were familiar with Tracy's voice and that the female voice on the audio recording of the September 22 telephone conversation was hers. Det. Renzulli also testified that Tomlinson called the same telephone number on both dates and that number was the telephone number the IMPD had in their records for Tracy. That was sufficient evidence to support Tomlinson's conviction.

[19] Tomlinson contends that we should listen to the two audio recordings and decide for ourselves whether it is the same female voice on both recordings. The State asserts that to do so would be to reweigh the evidence in contradiction to our deferential standard of review. However, as our Supreme Court has pointed out, the act of "*reviewing* video evidence" does not constitute impermissible appellate reweighting. *Robinson v. State*, 5 N.E.3d 362, 366 (Ind.

20140 (emphasis original). Even more recently, the Court reiterated our deferential standard of review in appeals relating to sufficiency of the evidence but articulated and applied a "narrow failsafe" standard of review regarding video evidence:

> We hold that Indiana appellate courts reviewing the sufficiency of evidence must apply the same deferential standard of review to video evidence as to other evidence, unless the video evidence indisputably contradicts the trial court's findings. A video indisputably contradicts the trial court's findings when no reasonable person can view the video and come to a different conclusion.

*Love v. State*, 73 N.E.3d 693, 695 (Ind. 2017). The Court cautioned that, where the video is "subject to different interpretations, we defer to the trial court's interpretation." *Id*. at 699-700.

[20] The reasoning of *Love* applies equally to evidence in the form of audio recordings; indeed, *Love* noted that, when determining whether video evidence is undisputable, one aspect the court must assess is the audio. *Id*. at 699.[4] However, the instant case is not one in which the audio evidence indisputably contradicts the trial court's finding, i.e., that Tomlinson's September 22 telephone call was to Tracy. The audio recordings of the September 22 and 23

---

[4] The State contends that *Love*'s holding is inapplicable because the audio recordings were not offered to prove what events took place but only for purposes of voice identification. That may make the recordings admissible for purposes of hearsay, but it says nothing about the standard of review that should apply. Moreover, while the September 23 recording was offered solely for purposes of comparison, the September 22 recording was also evidence that Tomlinson violated the no contact order.

telephone calls do not irrefutably contradict the testimony of the police officers that the voice on each recording is Tracy's voice or the other evidence that the telephone number Tomlinson called on each date was Tracy's number. This is not a situation where no reasonable person could listen to the audio evidence and think anything other than the female voice on the September 22 recording is not Tracy's voice. Instead, we have conflicting testimony of Tracy and the police officers and two audio recordings that do not serve to irrefutably contradict the police testimony. Therefore, we defer to the trial court's factual determination regarding the weight of the evidence and credibility of the witnesses. *Id*. at 700.

# Conclusion

[21] The trial court did not err in excluding Defendant's Exhibits A and B from evidence as Tomlinson failed to lay a proper foundation for their admission. And the State presented sufficient evidence to support Tomlinson's conviction.

[22] Affirmed.

Crone, J., and Altice, J., concur.