

IN THE

# Court of Appeals of Indiana

Tamela J. Hollingsworth,

*Appellant-Defendant*



FILED

Jun 22 2026, 9:25 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

v.

State of Indiana,

*Appellee-Plaintiff*

---

June 22, 2026

Court of Appeals Case No.
25A-CR-2809

Appeal from the Delaware Circuit Court

The Honorable Andrew J. Ramirez, Judge

Trial Court Cause No.
18C02-2411-F2-31

---

**Opinion by Judge Brown**
Judges Altice and DeBoer concur.

**Brown, Judge.**

[1] Tamela J. Hollingsworth appeals her convictions for dealing in methamphetamine and dealing in a narcotic drug as level 2 felonies. She argues that the trial court abused its discretion in admitting evidence and by allowing certain closing argument. We affirm.

## Facts and Procedural History

[2] On October 22, 2024, Muncie Police Sergeant Mike Nickens wrote an Affidavit for Search Warrant, which asserted that he "and other members of the Muncie Delaware County Drug Task Force ha[d] heard from more than one Confidential Source that Hollingsworth is driving her 2013 white Audi A6 . . . to Trotwood Ohio and picking up between 1 and 4 pounds of Methamphetamine and transporting it back to Muncie Indiana to be distributed." Exhibits Volume IV at 5. Sergeant Nickens asked that a search warrant be issued to allow the use of a GPS monitoring device on Hollingsworth's vehicle. That same day, the court issued a search warrant to install a GPS tracking unit on the white Audi A6 for thirty days. Sergeant Nickens attached a GPS unit to Hollingsworth's vehicle.

[3] Based upon GPS data, Sergeant Nickens observed the vehicle during the evening of October 28, 2024, and into the early hours of October 29, 2024, as it exited Delaware County, traveled to Dayton, Ohio, and pulled into the parking lot of a Rally's restaurant where it stayed for approximately ten minutes before leaving and traveling east to a casino where it remained for approximately

thirty minutes before returning to Delaware County. Sergeant Nickens observed that Hollingsworth started taking back roads and avoided the main roads even though "[t]here's no reason to hit stop signs and travel on a road with a lesser speed limit to take more time to get back to your residence." Transcript Volume II at 114. Sergeant Nickens ordered a traffic stop after visually observing the vehicle traveling approximately sixty miles per hour in a fifty-five mile per hour zone and that the window tint was in violation of Indiana law.

[4] Muncie Police Sergeant Joshua Carrington initiated a traffic stop of Hollingsworth's vehicle. As he approached the vehicle, Sergeant Carrington observed that the window tint was "extremely dark" and he could not easily see in the vehicle "even with the flashlight shining through." *Id.* at 141. Sergeant Carrington informed Hollingsworth that he stopped her due to a complaint regarding her speed and obtained her driver's license.

[5] Muncie Police Officer Zachary Osborn, a K-9 handler, deployed his K-9 for a free air sniff around Hollingsworth's vehicle. The K-9, which was trained to indicate on odors of methamphetamine, marijuana, crack cocaine, and heroin, gave a positive indication. Sergeant Carrington wrote Hollingsworth a ticket related to her window tint and speed.

[6] Sergeant Carrington searched the vehicle and discovered a purse on top of "bags inside of bags" in the passenger seat and a bag with what he believed to be crystal methamphetamine on the front passenger seat as well as a sunglass

case that contained a smaller amount of what appeared to be methamphetamine. *Id.* at 149. He also discovered two wallets. Sergeant Nickens discovered a drug ledger in the front passenger compartment where the narcotics were located.

[7] "[E]ach of the meth bags" weighed approximately 553 grams. Transcript Volume III at 38. A bag containing fentanyl weighed 61 grams gross with a net weight of 52 grams. A smaller bag contained approximately two grams of methamphetamine.

[8] On November 1, 2024, the State charged Hollingsworth with Count I, dealing in methamphetamine as a level 2 felony, and Count II, dealing in a narcotic drug as a level 2 felony. On March 12, 2025, Hollingsworth filed a Motion to Suppress Evidence. On April 3, 2025, the court held a hearing on the motion at which Sergeant Nickens testified. On April 15, 2025, the court entered a seven-page order denying the motion.

[9] On April 22, 2025, Hollingsworth filed a Motion in Limine asking the court to issue an order preventing reference to statements made by confidential informants, the GPS search warrant, the prior investigation, location data, or her invocation of right to counsel or right to remain silent. On May 1, 2025, the court held a hearing and stated that it would allow evidence that "there was a GPS tracker on the vehicle" but that "[a]nything else in addition to that, I'll go ahead and grant, uh, if the Defense objects to that." Transcript Volume II at

46. On May 1, 2025, the court entered an order on Hollingsworth's motion in limine granting it in part and denying it in part.

[10] In August 2025, the court held a jury trial. During his testimony, Sergeant Nickens identified State's Exhibit 22 as a report generated through the GPS application and stated that the report was a true and accurate copy of the report of the GPS in the late hours of October 28 to the early hours of October 29, 2024.[1] During preliminary questions by defense counsel, Sergeant Nickens testified that the information came from software called Covert Track and "[i]t came from their website which we have login privileges to." *Id.* at 107. Defense counsel objected for the reasons made in the motion in limine and motion to suppress and asserted that "there is not authentication for this document or foundation from the software provider." *Id.* The court admitted the report.

[11] During the testimony of Muncie Police Officer Brandon Qualls, an evidence technician, the prosecutor referenced State's Exhibit 27, and Officer Qualls indicated that the exhibit contained an affidavit of Andrew Koeling, a manager of the Indiana State Police Laboratory, an Indiana State Police Laboratory Division Outsource Notification, and a Chain of Custody Report. When asked

---

[1] State's Exhibit 22 contains thirteen pages of columns labeled "device_no," "latitude," "longitude," "speed," "direction," "status," "event," "insert_time," and "type." Exhibits Volume IV at 45. It also contained one page titled "Report," which had columns for "Device," "Date Time (ET)," "Speed (mph)," "Heading," "Park Time," "Estimated Address," "Latitude," "Longitude," and "Type." *Id.* at 58.

if he was the officer who took the evidence in this particular case to the Indiana State Police Laboratory, Officer Qualls answered affirmatively.

[12] Outside the presence of the jury, the parties discussed State's Exhibit 27, and defense counsel cited Ind. Evidence Rule 803(6) and asserted that "there is a portion of subsection A that must be contained in a business records affidavit that is not contained in this business records affidavit and that is the language of someone with knowledge." *Id.* at 236. He asserted that subsection D required that conditions be shown either by the testimony of the custodian of the records, another qualified witness, or by a certification that complies with Ind. Evidence Rule 902(11). He also argued that "the entries must be shown to have been by someone who had personal knowledge of the transaction represented at the time of entry," the exhibit contained hearsay, and its admission violated his right to confrontation of the Indiana State Police Laboratory. *Id.* at 240. The court overruled the objection and admitted State's Exhibit 27.

[13] After the State rested, Hollingsworth testified that she was married to Charles Clock, she had been in a relationship with him since January 2021, and he had been incarcerated for a period of time on charges of methamphetamine dealing and drug possession. She testified that she placed a number of Clock's possessions in her vehicle but did not look through them. She denied taking money with her to Dayton to pick up drugs and denied receiving drugs.

[14] On cross-examination, Hollingsworth testified that the bags in her car were from her mother-in-law's house and were "some of [Clock's] belongings that

[his mother] had picked up from Dearborn County . . . [o]ut of a car that [Clock] had been in when he was arrested" that was impounded. Transcript Volume III at 60. She indicated that she picked up the bags from her mother-in-law's home in "late September, early October" and left them in her car. *Id.* During cross-examination, the following exchange occurred:

> Q. . . . You were asking questions. You were not sure what was going on. "Why do I have to get out of my car? Why do I have to go to the back?" I mean, you were, I mean, you seemed a little bit confused.
>
> A. I was very confused.
>
> Q. And then when the one, the one officer said "Hook her up" and you were placed in handcuffs, you didn't say anything though, did you?

*Id.* at 66. Defense counsel objected and stated "[t]hat's what you call a Doyle violation." *Id.* During a sidebar, the attorneys had a discussion, and the court asked, "Can you move on?" *Id.* at 67. The prosecutor answered affirmatively. Hollingsworth indicated that the "little sunglass bag that had like a gram and a half to three (3) grams of meth with a little pipe in it" belonged to her. *Id.* at 68.

[15] During closing argument, defense counsel argued:

> Intent to deliver: What evidence were you given about [Hollingsworth's] intent? Really the only person to testify about her intent was her. And you are to judge her testimony as you would any other witness. She told you she had no intention to sell or deliver any substances. None. They have absolutely no indication in this evidence at all of any person that they believe she intended to deliver these substances to. None. No

communication, no screenshots, no text messages, no recorded calls, no financial transactions, nothing.

*Id.* at 124.  He later stated:

> Your first real observations of [Hollingsworth] outside of just seeing her in this trial were on body camera from police.  That's the first time you heard her voice.  And she wanted to know why she was being treated by police so aggressively.  She wants to know what she's done.  On the other hand, she's cooperative.  She abides by every order that she's given by police.

*Id.* at 129.

[16]    During rebuttal closing argument, the prosecutor stated:

> And so when she saw, when she gets pulled over for driving sixty (60) in a fifty-five (55) with a window tint, she might have been surprised on that back road.  But then there were more officers that show up.  And what did she do?  She's asking questions.  She doesn't want to remove herself from the driver's side door.  And is asking what are we doing and what's going on?  But then once she moves to the back, she doesn't ask any more questions.  What does she do?  She stands at the back of the vehicle.  The K-9 goes around the vehicles [sic] and makes his indication and then the officers search the vehicle.  During that entire time, the Defendant doesn't ask any questions.  What's the dog doing?  What's going on now?  I don't understand what's going on.  I might be sick.  Did she say any of that in the video?  She doesn't.  She stands at the back of the car smoking a cigarette.  And why doesn't she ask any questions at this point?  Because she knows what she has in the car and she knows, well like she's resigned herself to what the police are going to find.

*Id.* at 136-137.

Defense counsel objected "under Doyle," stated "[t]here's a comment on silence," and asked the court to strike the comments. *Id.* at 137. The court stated, "I don't necessarily agree that is comment on her silence. I . . . am going to overrule that. It's rebuttal argument on evidence." *Id.*

The jury found Hollingsworth guilty as charged. The court sentenced Hollingsworth to concurrent terms of seventeen and one-half years for each count.

**Discussion**

I.

Generally, we review the trial court's ruling on the admission or exclusion of evidence for an abuse of discretion. *Roche v. State*, 690 N.E.2d 1115, 1134 (Ind. 1997), *reh'g denied*. We reverse only when the decision is clearly against the logic and effect of the facts and circumstances. *Joyner v. State*, 678 N.E.2d 386, 390 (Ind. 1997), *reh'g denied*. We may affirm a trial court's decision regarding the admission of evidence if it is sustainable on any basis in the record. *Barker v. State*, 695 N.E.2d 925, 930 (Ind. 1998), *reh'g denied*. We review *de novo* a ruling on the constitutionality of a search or seizure, but we give deference to a trial court's determination of the facts, which will not be overturned unless clearly erroneous. *Campos v. State*, 885 N.E.2d 590, 596 (Ind. 2008); *see also Carpenter v. State*, 18 N.E.3d 998, 1001 (Ind. 2014) (holding that the ultimate determination of the constitutionality of a search or seizure is a question of law that we consider *de novo*).

[20]   Hollingsworth challenges the admission of: (A) evidence admitted subsequent to the search warrant; (B) evidence regarding chain of custody; and (C) evidence regarding GPS coordinates.

A. *Search Warrant*

[21]   Hollingsworth argues that Sergeant Nickens's probable cause affidavit does not contain any level of detail which showed how the confidential sources had knowledge of the facts contained in the affidavit. She asserts that the affidavit does not comply with Ind. Code § 35-33-5-2(b)(1) and must be corroborated pursuant to Ind. Code § 35-33-5-2(b)(2).[2]

[22]   The Fourth Amendment to the United States Constitution provides in part that "[t]he right of people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause . . . ." U.S. CONST. AMEND. IV. This constitutional requirement "is further codified in the Indiana Code, which lists the information that must be included in an affidavit supporting a search warrant." *Bunnell v. State*, 172 N.E.3d 1231, 1234 (Ind. 2021) (citing Ind. Code § 35-33-5-2). "[T]he Government's installation of a GPS device on a target's vehicle, and its use of that device to monitor the vehicle's movements,

---

[2] Ind. Code § 35-33-5-2(b) provides: "When based on hearsay, the affidavit must either: (1) contain reliable information establishing the credibility of the source and of each of the declarants of the hearsay and establishing that there is a factual basis for the information furnished; or (2) contain information that establishes that the totality of the circumstances corroborates the hearsay."

constitutes a 'search.'" *United States v. Jones*, 565 U.S. 400, 404, 132 S. Ct. 945, 949 (2012) (footnote omitted). "[P]robable cause . . . is the standard that must be established before the police may engage in a 'search' by installing a GPS device on a vehicle and monitor the vehicle's movements by means of such a device." *Keeylen v. State*, 14 N.E.3d 865, 874 (Ind. Ct. App. 2014), *clarified on reh'g*, 21 N.E.3d 840 (Ind. Ct. App. 2014), *trans. denied*. "Probable cause is 'not a high bar.'" *Hodges v. State*, 125 N.E.3d 578, 581-582 (Ind. 2019) (quoting *Kaley v. United States*, 571 U.S. 320, 338, 134 S. Ct. 1090 (2014)). It "is cleared when the totality of the circumstances establishes 'a fair probability'—not proof or a prima facie showing—of criminal activity, contraband, or evidence of a crime." *Id.* at 582 (quoting *Illinois v. Gates*, 462 U.S. 213, 235, 238, 243 n.13, 103 S. Ct. 2317 (1983)).

[23] In the four-page Affidavit for Search Warrant, Sergeant Nickens asserted that he had worked with the Muncie Police Narcotics Unit since 2012, was assigned to the Muncie Delaware County Drug Task Force, and was the Task Force Officer for the DEA. He indicated he conducted an investigation of Hollingsworth who was dealing methamphetamine in and around Muncie. He asserted that Confidential Informant 1 ("C.I. 1") told him that Hollingsworth was driving her white Audi from Muncie to Trotwood, Ohio, at least once a week and bringing back between one and four pounds of methamphetamine to the Muncie area. He asserted that C.I. 1 had "provided information to [him] that ha[d] been collaborated [sic] through investigations by [him] or information that [he] already had knowledge of" and that C.I. 1 "also gave a

statement against their penal interest on a drug investigation." Exhibits Volume IV at 5. He asserted that Confidential Informant 2 ("C.I. 2") stated that Hollingsworth was "driving her Audi A6 to the Dayton/Trotwood area and picking up at least a pound of Methamphetamine and sometimes more and bringing it back to Muncie and distributing it." *Id.* C.I. 2 also stated that Hollingsworth was living "at an apartment located at Burlington and 12th St." and this information was confirmed by C.I. 1. *Id.* Sergeant Nickens indicated that C.I. 2 provided information to him that "ha[d] been collaborated [sic] through investigation" by him or information that he already knew and that C.I. 2 had "also conducted controlled buys of narcotics" for him and had provided statements against their penal interest. *Id.* at 6. Sergeant Nickens wrote that he went to the apartment complex at Burlington and 12th Street and located a white Audi A6 and its license plate "returned to" Hollingsworth. *Id.* He also wrote that he was familiar with the methods employed by individuals engaged in the trafficking of controlled substances and described those behaviors. Under the circumstances, we conclude that law enforcement had probable cause.

B. *Chain of Custody*

[24] Hollingsworth argues that State's Exhibit 27 constituted hearsay and was not properly self-authenticated. He argues that the affidavit did not indicate that "making the record was a regular practice of that activity," and it does not "indicate that someone with knowledge made the record or that the record was

made from information transmitted by someone with knowledge." Appellant's Brief at 16.

[25] Ind. Evidence Rule 801(c) provides hearsay is a statement which is not made by the declarant while testifying at trial and offered to prove the truth of the matter asserted. Ind. Evidence Rule 802 provides hearsay is inadmissible unless the rules or other law provide otherwise. Ind. Evidence Rule 803 provides in part:

> The following are not excluded by the rule against hearsay, regardless of whether the declarant is available as a witness:
>
> * * * * *
>
> **(6) Records of a Regularly Conducted Activity.** A record of an act, event, condition, opinion, or diagnosis if:
>
>> (A) the record was made at or near the time by--or from information transmitted by--someone with knowledge;
>>
>> (B) the record was kept in the course of a regularly conducted activity of a business, organization, occupation, or calling, whether or not for profit;
>>
>> (C) making the record was a regular practice of that activity;
>>
>> (D) all these conditions are shown by the testimony of the custodian or another qualified witness, or by a certification that complies with Rule 902(11) or (12) or with a statute permitting certification;[3] and

---

[3] Ind. Evidence Rule 902 provides in part:

> The following items of evidence are self-authenticating; they require no extrinsic evidence of authenticity in order to be admitted:

(E) neither the source of information nor the method or circumstances of preparation indicate a lack of trustworthiness.

[26] In commenting on Ind. Evidence Rule 803(6), the Indiana Supreme Court has held:

> [T]he business records exception permits records of business activity to be admitted in circumstances when the recorded information will be trustworthy. The reliability of business records stems from the fact that the organization depends on them to operate, from the sense that they are subject to review, audit, or internal checks, from the precision engendered by the repetition, and from the fact that the person furnishing the information has a duty to do it correctly.

*Matter of K.R.*, 154 N.E.3d 818, 821 (Ind. 2020) (quoting *Stahl v. State*, 686 N.E.2d 89, 92 (Ind. 1997)).

[27] Generally, the sponsor of an exhibit offered under this exception need not have personally made it, filed it, or had firsthand knowledge of the transaction represented by it. *Tate v. State*, 835 N.E.2d 499, 509 (Ind. Ct. App. 2005) (citing *Payne v. State*, 658 N.E.2d 635, 645 (Ind. Ct. App. 1995) (citation omitted),

* * * * *

**(11) Certified Domestic Records of a Regularly Conducted Activity.** Unless the source of information or the circumstances of preparation indicate a lack of trustworthiness, the original or a copy of a domestic record that meets the requirements of Rule 803(6)(A)-(C), as shown by a certification under oath of the custodian or another qualified person. Before the trial or hearing, the proponent must give an adverse party reasonable written notice of the intent to offer the record--and must make the record and certification available for inspection--so that the party has a fair opportunity to challenge them.

*trans. denied*), *trans. denied*. "[A] sponsoring witness is not required to testify that he knew that the person who entered the information on the documents had personal knowledge of the events recorded." *Payne*, 658 N.E.2d at 645. "Rather, records kept in the usual course of business are presumed to have been placed there by those who have a duty to so record and have personal knowledge of the transaction represented by the entry, unless there is a showing to the contrary." *Id.* (citing *Lyons v. State*, 506 N.E.2d 813, 816-817 (Ind. 1987) ("An official record, such as the arrest reports here, may be attested to by the person who has custody of those records . . . . Records contained in the usual course of business are presumed to have been placed there by those who have a duty to so record and have personal knowledge of the transaction represented by the entry, unless there is a showing to the contrary.")).

[28] The record reveals that Officer Qualls, the evidence technician, testified that State's Exhibit 27 stated the list of items that he transported to the Indiana State Police Laboratory on November 27, 2024. When asked if, with "looking at that document, are you confident that you had follow[ed] the procedure, the policies and procedures of the Muncie Police Department," Officer Qualls answered affirmatively. Transcript Volume II at 243. He identified State's Exhibit 27 as containing an affidavit of Koeling, a manager of the Indiana State Police Laboratory, an Indiana State Police Laboratory Division Outsource Notification, and a Chain of Custody Report. Koeling asserted in his affidavit that he was employed by the Indiana State Police Laboratory in the capacity of Indianapolis Regional Laboratory Manager, he was familiar with the record

keeping practices and procedures of the laboratory, the attached records were true and accurate copies of the original records, the records were made and kept in the usual course of business, and the entries were made at the time such acts, transactions, occurrences, or events referred to occurred or within a reasonable time thereafter. Koeling signed the affidavit, which was notarized. The attached document was titled Indiana State Police Laboratory Chain of Custody Report and listed Officer Qualls as the first person from which multiple pieces of evidence were relinquished. Based upon the record we cannot say the trial court abused its discretion in admitting State's Exhibit 27.[4]

C. *GPS Coordinates*

[29] Hollingsworth argues that the admission of the GPS report "violated hearsay and authentication rules." Appellant's Brief at 18. The State asserts that, "[w]hile the trial court admitted Exhibit 22 without a business-records foundation, its presence in the evidence is harmless . . . ." Appellee's Brief at 34.

[30] Where the trial court has erred in the admission of evidence, we will not reverse the conviction if that error was harmless. *Turner v. State*, 953 N.E.2d 1039,

---

[4] To the extent Hollingsworth cites *Williams v. State*, 64 N.E.3d 221 (Ind. Ct. App. 2016), we find that case distinguishable. In *Williams*, the Certification of Authenticity was deficient because it contained "only a notary signature as 'witness,'" there was no signature by a records custodian or another qualified person, the certification did not set forth the qualifications of the purported records custodian or other qualified person, and the certification did not show that the records met "the requirements of Evidence Rule 803(6)(A) – (C)." 64 N.E.3d at 225.

1058 (Ind. 2011). Generally, errors in the admission of evidence are to be disregarded unless they affect the substantial rights of a party. *Id.* at 1059. The improper admission is harmless error if the conviction is supported by substantial independent evidence of guilt satisfying the reviewing court there is no substantial likelihood the challenged evidence contributed to the conviction. *Id.* Moreover, any error in the admission of evidence is not prejudicial, and is therefore harmless, if the same or similar evidence has been admitted without objection or contradiction. *Hoglund v. State*, 962 N.E.2d 1230, 1238 (Ind. 2012) (citation omitted), *reh'g denied*. Further, "[a] defendant's reference to or use of an erroneously admitted line of evidence cures or waives any error." *Reaves v. State*, 586 N.E.2d 847, 853 (Ind. 1992) (citing *United States v. Silvers*, 374 F.2d 828 (7th Cir. 1967), *cert. denied*, 389 U.S. 888, 88 S. Ct. 128 (1967)).

[31] As noted above, State's Exhibit 22 contains thirteen pages of columns labeled "device_no," "latitude," "longitude," "speed," "direction," "status," "event," "insert_time," and "type," and one page titled "Report," which had columns for "Device," "Date Time (ET)," "Speed (mph)," "Heading," "Park Time," "Estimated Address," "Latitude," "Longitude," and "Type." Exhibits Volume IV at 45, 58. Sergeant Nickens testified that he attached the GPS to Hollingsworth's vehicle, he watched the GPS while it was activated, and he viewed the location of the GPS on an app on his phone. He also testified that, based upon the GPS, he observed Hollingsworth's vehicle leave Delaware County, travel to Dayton, Ohio, pull into a parking lot of a restaurant, travel to a casino in Dayton, and return to Delaware County. Thus, State's Exhibit 22

was cumulative of other evidence. We also note that defense counsel utilized the exhibit during cross-examination of Sergeant Nickens. Specifically, defense counsel handed State's Exhibit 22 to Sergeant Nickens and questioned him as to certain addresses, whether gas stations typically have surveillance footage, and his failure to obtain security footage from the restaurant or the casino. Reversal is not warranted.

II.

[32] Hollingsworth cites *Doyle v. Ohio*, 426 U.S. 610, 96 S. Ct. 2240 (1976), and argues that the questions during the prosecutor's cross-examination of her and a later comment during closing argument commented on her silence "in contravention of [her] Fifth Amendment rights." Appellant's Brief at 19.

[33] To the extent Hollingsworth's argument suggests prosecutorial misconduct, in reviewing such a claim, we determine: whether the prosecutor engaged in misconduct, and if so, whether the misconduct, under all of the circumstances, placed the defendant in a position of grave peril to which he or she should not have been subjected. *Sobolewski v. State*, 889 N.E.2d 849, 856 (Ind. Ct. App. 2008) (citing *Cooper v. State*, 854 N.E.2d 831, 835 (Ind. 2006)), *trans. denied*. Whether a prosecutor's argument constitutes misconduct is measured by reference to case law and the Rules of Professional Conduct. *Id.* The gravity of peril is measured by the probable persuasive effect of the misconduct on the jury's decision rather than the degree of impropriety of the conduct. *Id.* The probability that misconduct had a persuasive effect is "generally a function of

three factors: the persuasiveness of the comment, the relative strength of the State's case, and the effectiveness of the trial judge's response to the comment." *Id.* at 858 (citation omitted). We also note that a trial court's jury instructions are presumed to cure any improper statements made during trial. *Guy v. State*, 755 N.E.2d 248, 258 (Ind. Ct. App. 2001), *reh'g denied*, *trans. denied*.

[34] In *Doyle*, the United States Supreme Court held that under the Fourteenth Amendment a prosecutor may not use the silence of a defendant who has been arrested and Mirandized to impeach the defendant. *Sobolewski*, 889 N.E.2d at 857 (citing *Trice v. State*, 766 N.E.2d 1180, 1182 (Ind. 2002) (citing *Doyle*, 426 U.S. at 619, 96 S. Ct. 2240)). "Miranda warnings inform a person of his right to remain silent and assure him, at least implicitly, that his silence will not be used against him." *Id.* (citing *Trice*, 766 N.E.2d at 1183 (citation omitted)). "We note that a *Doyle* violation is actually a violation of the Due Process Clause's prohibition against fundamental unfairness, not a violation of the Fifth Amendment privilege against self-incrimination." *Bevis v. State*, 614 N.E.2d 599, 602 (Ind. Ct. App. 1993) (citing *Wainwright v. Greenfield*, 474 U.S. 284, 291, 291 n.7, 106 S. Ct. 634, 638-639, 639 n.7 (1986)).

[35] With respect to the prosecutor's question during the cross-examination of Hollingsworth, defense counsel objected and asserted during the sidebar, "I'm just going to ask that they not be permitted to go under this line of questioning under Doyle." Transcript Volume III at 67. The trial court asked the prosecutor if he could "move on," and the prosecutor answered affirmatively. *Id.* We cannot say that the trial court's action which essentially granted defense

counsel's objection resulted in reversible error. *See generally Konkle v. State*, 253 N.E.3d 1068, 1082 (Ind. 2025) ("[T]o preserve the issue for appeal following a *sustained* objection, the defendant must request an admonishment of the jury, and if further relief is required, move for a mistrial.").

[36] To the extent Hollingsworth cites *Doyle* and points to the prosecutor's comments during closing argument regarding her behavior while she was smoking a cigarette as the search of her car occurred, this behavior occurred prior to any *Miranda* advisement. The United States Supreme Court has held that *Doyle* applies after *Miranda* warnings. *See Salinas v. Texas*, 570 U.S. 178, 188 n.3, 133 S. Ct. 2174, 2182 n.3 (2013) ("[*D*]*ue process* prohibits prosecutors from pointing to the fact that a defendant was silent after he heard *Miranda* warnings, *Doyle v. Ohio,* 426 U.S. 610, 617-618, 96 S. Ct. 2240, 49 L.Ed.2d 91 (1976), but that rule does not apply where a suspect has not received the warnings' implicit promise that any silence will not be used against him, *Jenkins v. Anderson,* 447 U.S. 231, 240, 100 S. Ct. 2124, 65 L.Ed.2d 86 (1980).") (plurality opinion); *Wainwright v. Greenfield*, 474 U.S. 284, 292, 295, 106 S. Ct. 634, 639, 640 (1986) ("The point of the *Doyle* holding is that it is fundamentally unfair to promise an arrested person that his silence will not be used against him and thereafter to breach that promise by using the silence to impeach his trial testimony. . . . What is impermissible is the evidentiary use of an

individual's exercise of his constitutional rights after the State's assurance that the invocation of those rights will not be penalized.").[5]

[37] Based upon the record we conclude that Hollingsworth has not established that the challenged questioning and closing argument by the prosecutor, considered separately or together, were so prejudicial and inflammatory that Hollingsworth was placed in a position of grave peril to which she should not have been subjected or that the jury's decision was affected. We cannot say that Hollingsworth has established prosecutorial misconduct or reversible error. *See Rowe v. State*, 717 N.E.2d 1262, 1267 (Ind. Ct. App. 1999) (finding the references to the defendant's silence during examination of a law enforcement officer were few and brief in the context of the entire trial and, in light of the factors, the prosecutor's comments on the defendant's failure to disclaim he was the driver of a truck did not render the trial unfair).

[38] For the foregoing reasons, we affirm Hollingsworth's convictions.

[39] Affirmed.

---

[5] To the extent Hollingsworth cites *Bevis v. State*, 614 N.E.2d 599, 600 (Ind. Ct. App. 1993), that case addressed "[w]hether the State's cross-examination of [the defendant] concerning her post-arrest silence violated her right to fundamental fairness guaranteed by the Due Process Clause of the Fourteenth Amendment." We held that the State's questions were impermissible under *Doyle*, "[t]he State sought to impeach [the defendant's] exculpatory testimony by making direct reference to her post-arrest silence, even though [the defendant] had been advised when charged that she had a right to remain silent," and "[t]hese questions violated [the defendant's] Due Process right to fundamental fairness." 614 N.E.2d at 602. The prosecutor's comments during the closing argument referenced Hollingsworth's conduct while smoking a cigarette which occurred prior to her arrest and any *Miranda* advisement. Accordingly, we find *Bevis* distinguishable.

Altice, J., and DeBoer, J., concur.


ATTORNEY FOR APPELLANT

Brandon E. Murphy
Cannon Bruns & Murphy
Muncie, Indiana


ATTORNEYS FOR APPELLEE

Theodore E. Rokita
Attorney General of Indiana

Ian McLean
Supervising Deputy Attorney General
Indianapolis, Indiana